ERNEST AND MARY C. HORTON, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 3386–91.           Filed February 9, 1993.

*Thomas J. Utaski* and *Ljubomir Nacev,* for petitioners.
*Roderick H. Fillinger,* for respondent.

OPINION

RUWE, *Judge:* Respondent determined a deficiency of $130,850 in petitioners' 1985 Federal income tax. After concessions, the only issue for decision is whether section 104(a)(2)[1] allows petitioners to exclude an award of punitive damages from taxable income.

This case was submitted fully stipulated pursuant to Rule 122(a). The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners resided in Florence, Kentucky, when they filed their petition in this case.

On December 1, 1981, a Boone County circuit court jury found Union Light, Heat & Power Co. (Union) liable for failing to detect a gas leak in petitioners' residence. This leak resulted in an explosion and fire that destroyed petitioners' residence, causing them personal injury.

The jury found that petitioner Ernest Horton was entitled to compensatory damages in the amount of $62,265 and also awarded punitive damages in the amount of $100,000. The

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

jury found that petitioner Mary C. Horton was entitled to compensatory damages in the amount of $41,287 and also awarded punitive damages in the amount of $400,000. The punitive damage awards were based on a finding of gross negligence on the part of Union.

Upon entry of the judgment, Union paid the compensatory damages and appealed the issue of punitive damages to the Kentucky Court of Appeals, which reversed the circuit court on that issue. Petitioners appealed the reversal to the Kentucky Supreme Court. On April 11, 1985, that court reversed the court of appeals and reinstated the punitive damage awards. See *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382 (Ky. 1985). During 1985, Union paid $100,000 in punitive damages to petitioner Ernest Horton, and $400,000 in punitive damages to petitioner Mary C. Horton.

Petitioners excluded the punitive damage amounts from income on their 1985 Federal income tax return. Respondent determined that petitioners should have included those amounts in income, and therefore determined a deficiency. Petitioners timely filed a petition with this Court seeking a redetermination of that deficiency.

Section 104(a)(2) provides that gross income does not include:

the amount of *any damages* received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness; [Emphasis added.[2]]

The phrase "damages received" is defined in the regulations as "an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Sec. 1.104-1(c), Income Tax Regs.

Respondent does not dispute that petitioners had an underlying claim against Union for personal injuries. The sole issue presented by the parties is whether the punitive damages, which petitioners received in addition to compen-

---

[2] In 1989, sec. 104(a) was amended, making sec. 104(a)(2) inapplicable to punitive damages received in a case not involving physical injury or sickness. Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7641(a), 103 Stat. 2106, 2379. The amendment generally applies to amounts received after July 10, 1989. The legislative history reveals that the amendment was meant to *limit* the scope of sec. 104(a)(2). See Jaeger, "Taxation of Punitive Damage Awards: The Continuing Controversy", Tax Notes 109, 113-114 (Oct. 5, 1992) (amendment serves as rejection of argument that punitive damages are taxable because they are "additions to wealth").

satory damages, are excludable from income pursuant to section 104(a)(2).[3]

We recently considered whether punitive damages received in a personal injury suit were excludable under section 104(a)(2) and held that they were. *Miller v. Commissioner,* 93 T.C. 330 (1989). We reasoned that:

Section 104(a)(2) excludes from gross income "any damages received * * * on account of personal injuries." Congress enacted the predecessor of section 104(a)(2) as section 213(b)(6) of the Revenue Act of 1918. Pub. L. 65-254, 40 Stat. 1057, 1066. By that time, the availability of punitive or exemplary damages had long been established. Note, "Exemplary Damages in the Law of Torts," 70 Harv. L. Rev. 517, 518-520 (1957). Congress, aware of that fact, could have excluded only "compensatory damages" or provided that only damages received "as compensation for" personal injuries be excluded. * * * It did neither, and the plain meaning of the broad statutory language simply does not permit a distinction between punitive and compensatory damages. See *Crane v. Commissioner,* 331 U.S. 1, 6 (1947) ("the words of statutes—including revenue acts—should be interpreted where possible in their ordinary, everyday senses."). Thus, we read "any damages" to mean "all" damages, including punitive damages. Webster's Third New International Dictionary (1981). [*Id.* at 338.]

The Court of Appeals for the Fourth Circuit reversed our holding in *Miller,* 914 F.2d 586 (4th Cir. 1990). The Court of Appeals agreed that the underlying cause of action in *Miller* (defamation) was an action for personal injury but, nevertheless, held that the portion of the award attributable to punitive damages was not excludable under section 104(a)(2). The court first found the language of section 104(a)(2) excluding "any damages received * * * on account of personal injuries" *to be ambiguous. The court then interpreted this statutory* language narrowly so as to apply only to damages intended to make the taxpayer whole, as opposed to awards that generate a gain or profit. Looking to the applicable State law (Maryland) pursuant to which the damages were awarded, the court concluded that the punitive damages in *Miller* were awarded for "purely punitive" purposes and not to compensate for loss caused by the personal injury.

---

[3] On brief, respondent states:

Petitioners received compensatory damages which were excluded from income. At issue is the taxability of punitive damages which were paid on account of the outrageousness of the defendant's conduct to deter similar conduct in the future. The damages were not paid on account of petitioners' personal injury.

Respondent makes no argument that any portion of the punitive damages was attributable to property damage as opposed to personal injury, and we express no view on that point.

We have previously rejected the concept that section 104(a)(2) excludes only amounts that restore lost capital as opposed to amounts that would otherwise constitute gains or accessions to wealth. *Downey v. Commissioner,* 97 T.C. 150, 161 (1991);[4] *Miller v. Commissioner,* 93 T.C. at 338. After careful consideration of the views of the Fourth Circuit, we reaffirm our holding in *Miller* that punitive damages received as a result of a personal injury claim are excludable under section 104(a)(2).[5] The beginning and end of the inquiry should be whether the damages were paid on account of "personal injuries". This inquiry is answered by determining the nature of the underlying claim. Once the nature of the underlying claim is established as one for personal injury, any damages received on account of that claim, including punitive damages, are excludable.

The Supreme Court's recent opinion in *United States v. Burke,* 504 U.S. _____, 112 S. Ct. 1867 (1992), supports the analysis that we have adopted. In that case, the taxpayers contended that backpay[6] awarded in a sex discrimination suit under title VII of the Civil Rights Act of 1964 was excludable from income under section 104(a)(2). In *Burke v. United States,* 929 F.2d 1119, 1121 (6th Cir. 1991), the Sixth

---

[4]In *Downey v. Commissioner,* 97 T.C. 150, 163-164 (1991), we stated:

Whether the damages paid to the tort victim reflect a substitute for amounts or items otherwise taxable or a substitute for amounts or items to be enjoyed without a tax consequence is irrelevant. Thus, section 104(a)(2) permits the exclusion of damages that are a substitute for the enjoyment of a whole body or of freedom from distress * * *. Likewise, the section allows the exclusion of damages that are a substitute for amounts or items that otherwise would be taxable or would potentially produce taxable benefit, such as income lost as a result of a personal injury or amounts reflecting injury to a person's business or professional reputation. *Burke v. United States,* 929 F.2d 1119, 1123 (6th Cir. 1991) (lost wages); *Threlkeld v. Commissioner,* 87 T.C. 1294 (1986), affd. 848 F.2d 81 (6th Cir. 1988) (business or professional reputation). In sum, under section 104(a)(2), we will focus on whether the injury is personal and on whether the claim resulting in payment of damages is tort or tort-like, not on the consequences of the personal injury or the actual damages suffered.

Commentators have questioned the return of capital theory as a justification for exclusion under sec. 104(a)(2). See Brooks, "Developing a Theory of Damage Recovery Taxation", 14 William Mitchell L. Rev. 759, 785 (1988); Cochran, "1989 Tax Act Compounds Confusion Over Tax Status of Personal Injury Damages", Tax Notes 1565, 1573 (Dec. 31, 1990); Dodge, "Taxes and Torts", 77 Cornell L. Rev. 143, 152-153 (1992); Henning, "Recent Developments in the Tax Treatment of Personal Injury and Punitive Damage Recoveries", 45 Tax Law. 783, 796 (1992); see also Jaeger, "Taxation of Punitive Damage Awards: The Continuing Controversy", Tax Notes 109, 114 (Oct. 5, 1992).

[5]This case is not appealable to the Fourth Circuit; therefore, we are not required to follow its holding. *Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

[6]Backpay was described as the differential between the appropriate pay and actual pay for services performed. *United States v. Burke,* 504 U.S. _____, 112 S. Ct. 1867, 1873 (1992).

Circuit applied a section 104(a)(2) analysis that is identical to this Court's, stating:

> determining whether the §104(a)(2) exclusion applies requires an examination of the nature of the injury to determine whether the injury and claim are personal and tort-like in nature, and not whether the consequences of the injury resulted in an award of compensatory damages or damages for back pay. * * *

Relying on our analysis in *Threlkeld v. Commissioner,* 87 T.C. 1294 (1986), affd. 848 F.2d 81 (6th Cir. 1988), the Sixth Circuit held:

> In sum, *Threlkeld* and its progeny require that for the purposes of §104(a)(2), this court determine whether the injury is personal and the claim resulting in the damages is tort-like in nature. If the answer is in the affirmative, then that is "the beginning and end of the inquiry." *Threlkeld,* 87 T.C. at 1299. The damages resulting from such a claim are fully excludable under §104(a)(2). * * * [*Burke v. United States,* 929 F.2d at 1123.]

Although the Supreme Court reversed the Court of Appeals' holding that the underlying title VII claim was tortlike in nature, the Supreme Court expressly adopted the Sixth Circuit's section 104(a)(2) analysis, which focused on the nature of the underlying claim, rather than on the type of damages received.

> We thus agree with the Court of Appeals' analysis insofar as it focused, for purposes of §104(a)(2), on the nature of the claim underlying * * * [the taxpayers'] damages award. See 929 F.2d, at 1121; *Threlkeld v. Commissioner,* 87 T.C., at 1305. * * * [*United States v. Burke,* 504 U.S. at ____, 112 S. Ct. at 1872.]

Relying on section 1.104-1(c), Income Tax Regs., the Supreme Court interpreted the words "damages received" as "an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights". *Id.* at ____, 112 S. Ct. at 1870. Therefore, if the taxpayer's underlying claim was based upon a tort type personal injury and the damages in question were received through prosecution of that claim, they are excludable. *Downey v. Commissioner, supra* at 161; *Miller v. Commissioner,* 93 T.C. at 337; *Threlkeld v. Commissioner, supra* at 1308. As the Supreme Court stated:

("The essential element of an exclusion under section 104(a)(2) is that the income involved must derive from some sort of tort claim against the payor * * * [*United States v. Burke,* 504 U.S. at ____, 112 S. Ct. at 1870 (quoting *Threlkeld v. Commissioner, supra* at 1305).]

While Justice O'Connor, joined by Justice Thomas, dissented from the majority's holding that the title VII claim was not a tort type action, the dissenting opinion was in full agreement with the majority that the essential determination for excludability under section 104(a)(2) was the nature of the underlying claim.

Section 104(a)(2) allows taxpayers to exclude from gross income "damages received . . . on account of personal injuries or sickness." The Court properly defers to an Internal Revenue Service (IRS) regulation that reasonably interprets the words "damages received" to mean "an amount received . . . through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." 26 CFR §1.104-1(c) (1991). See *ante,* at 1870; *United States v. Correll,* 389 U.S. 299 * * * (1967). Therefore, respondents may exclude from gross income any amount they received as a result of asserting a "tort type" right to recover for personal injury. [*Id.* at ____, 112 S. Ct. at 1878 (O'Connor, J., dissenting).]

Our interpretation of the impact of *United States v. Burke, supra,* on the excludability of punitive damages is supported by the recent decision in *O'Gilvie v. United States,* 92-2 USTC par. 50,567 (D. Kan. 1992). The District Court, relying on the Fourth Circuit's opinion in *Miller,* had originally held that punitive damages received in a wrongful death suit were not excludable under section 104(a)(2). 70 AFTR 2d 92-5069, 92-2 USTC par. 50,344 (D. Kan. 1992). After the Supreme Court's decision in *Burke,* the taxpayer filed a motion for reconsideration in which he contended that the Supreme Court's focus on the underlying nature of a claim supported excludability. The District Court agreed, stating:

In our previous order, this court focused on the nature of the punitive damage award itself, rather than the nature of the underlying claim. In light of *Burke,* we believe our focus was misplaced. The Supreme Court's opinion makes clear that the proper inquiry for purposes of §104(a)(2) is on the nature of the claim underlying the taxpayers' damages award. As we recognized in our previous order, the underlying suit giving rise to O'Gilvie's recovery of punitive damages is indisputedly tort-like in nature. Accordingly, the court believes its previous order is contrary to *Burke* and must be reversed. [*O'Gilvie v. United States,* 92-2 USTC par. 50,567, at 85,974-85,975 (D. Kan. 1992); citations omitted.]

In *Burke,* the Supreme Court focused extensively on the remedies available under title VII in order to distinguish it from claims lying in tort. In describing the nature of a tort claim, the Supreme, Court stated:

Indeed, one of the hallmarks of traditional tort liability is the availability of a broad range of damages to compensate the plaintiff * * *. Although these damages often are described in compensatory terms, in many cases they are larger than the amount necessary to reimburse actual monetary loss sustained or even anticipated by the plaintiff, and thus redress intangible elements of injury that are "deemed important, even though not pecuniary in [their] immediate consequence[s]." * * * [*United States v. Burke,* 504 U.S. at ____, 112 S. Ct. at 1871; citations omitted.]

The Court held that "consideration of the remedies available * * * is critical in determining the 'nature of the statute' and the 'type of claim'", 504 U.S. at ____ n.7, 112 S. Ct. at 1872 n.7, and observed that in tort actions "punitive or exemplary damages are generally available in those instances where the defendant's misconduct was intentional or reckless." *Id.* at ____, 112 S. Ct. at 1872 (citing *Molzof v. United States,* 502 U.S. ____, 112 S. Ct. 711 (1992)).[7] The Supreme Court's analysis establishes that punitive damages are not merely an incidental result of a personal injury claim as suggested by the Fourth Circuit. Rather, they are "inextricably bound up" with the concept of tort type rights, *id.* at ____ n.7, 112 S. Ct. at 1872 n.7, and therefore one of the prime determinants of whether a claim is for personal injury. As one of the hallmarks of traditional tort claims, it is logical to conclude that punitive damages are received "on account of" such claims.

The underlying facts in the instant case illustrate the difficulty of attempting to apply the Fourth Circuit's test for excludability, which distinguishes between damages that serve a compensatory purpose and those that serve a retributive function. In *Horton v. Union Light, Heat & Power Co.,* 690 S.W.2d 382, 390 (Ky. 1985), the Kentucky Supreme

---

[7]Despite other tortlike aspects of title VII, the Court rejected characterization of that statute as tortlike because the damages available thereunder were limited to backpay. The unavailability of punitive damages was one of the reasons for that rejection. Justice O'Connor, joined by Justice Thomas, dissented from the majority on the grounds that "the remedies available to Title VII plaintiffs do not fix the character of the right they seek to enforce." *United States v. Burke,* 504 U.S. at ____, 112 S. Ct. at 1878 (O'Connor, J., dissenting). The majority opinion's response was that "the concept of a 'tort' is inextricably bound up with remedies—specifically damages actions. Thus, we believe that consideration of the remedies available under title VII is critical in determining the 'nature of the statute' and the 'type of claim' brought by respondents for purposes of §104(a)(2)." *Id.* at ____n.7, 112 S. Ct. at 1872 n.7.

Court provided the following rationale for awarding punitive damages to petitioners:

There is a reason for paying the punitive damages awarded to the injured party. It is because "the *injury* has been *increased* by the *manner* [in which] it was inflicted." *Chiles v. Drake, supra.* (Emphasis added.) In *Louisville & N.R. Co. v. Roth,* 130 Ky. 759, 114 S.W. 264, 266 (1908), we explained that although "punitive damages are awarded as a civil punishment upon the wrongdoer, rather than as indemnity to the injured party . . . it might with much propriety be said that they are allowed by way of remuneration for the aggravated wrong done." Thus there are sound legal reasons of longstanding supporting *both* the award of punitive damages *and* their payment to the injured party in addition to compensatory damages.

The concept of punitive damages represents more than mere blind adherence to ancient precedent. It is as just a principle and as fair to the litigants today as it ever was. Improperly applied, it may indeed be nothing more than a *windfall or a double recovery.* But there are few if any principles of law which could not be criticized as sometimes misapplied.

"It would be simplistic to characterize this virtual unanimity [among the states in adhering to the concept of punitive damages] as mere blind adherence to an outmoded principle. Rather, the doctrine of punitive damages survives because it continues to serve the useful purposes of expressing society's disapproval of intolerable conduct and deterring such conduct where no other remedy would suffice." Mallor and Roberts, *Punitive Damages Toward a Principled Approach,* 31 Hastings L.J. 639, 641 (1980).

It appears that in Kentucky, punitive damages serve both to compensate the injured party and punish the wrongdoer.

Where punitive damages appear to serve both a retributive and compensatory purpose, there is some indication that the Fourth Circuit would hold that all or part of such damages are excludable from income, although this is not entirely clear.[8] The Fourth Circuit apparently agreed with the holding in *Burford v. United States,* 642 F. Supp. 635 (N.D. Ala. 1986), in which the District Court held that all the punitive damages received under the Alabama wrongful death statute were received "on account of" personal injury and were thus excludable from gross income. *Commissioner v. Miller,* 914 F.2d at 591. On the other hand, the Fourth Circuit concluded that the punitive damages in *Miller,* which were awarded under Maryland law, were not excludable because they were

---

[8] In *Commissioner v. Miller,* 914 F.2d 586, 591 (4th Cir. 1990), revg. 93 T.C. 330 (1989), the Fourth Circuit distinguished its decision in *Thompson v. Commissioner,* 866 F.2d 709 (4th Cir. 1989), affg. 89 T.C. 632 (1987), in which it had held that liquidated damages serving "both a deterrent *and* compensatory purpose" were excludable under sec. 104(a)(2).

"purely punitive and do not compensate." *Id.*[9] We do not know how the Fourth Circuit's test would be applied to the punitive damages awarded to petitioners as a result of the Kentucky Supreme Court's decision in *Horton v. Union Light, Heat & Power Co., supra.* Because of our adherence to our prior opinion in *Miller,* we need not provide an answer.

We hold that petitioners are entitled to exclude their punitive damages from gross income under section 104(a)(2).

*Decision will be entered under Rule 155.*

Reviewed by the Court.

HAMBLEN, CHABOT, PARKER, SHIELDS, COHEN, CLAPP, SWIFT, GERBER, WRIGHT, PARR, WELLS, COLVIN, BEGHE, CHIECHI, AND LARO, *JJ.,* agree with the majority opinion.

---

BEGHE, *J.,* concurring: I agree with the result in this case and join the majority opinion, but write separately to highlight an issue disclosed by stipulated facts. If respondent had raised this issue, the result might well have been different in part.

In addition to determining that none of the punitive damages were excludable under section 104(a)(2), respondent could also have determined and argued, as a partial alternative, that the punitive damages attributable to nonpersonal injuries (destruction of petitioners' personal residence and furniture and expenses of debris removal) should not be excluded under section 104(a)(2) because they were not received "on account of personal injuries or sickness".

The parties stipulated that petitioners' lawsuit against Union resulted in a jury verdict that Mr. Horton had sustained compensatory damages of $62,265, of which $30,290 (49 percent) was attributable to personal injuries, and $31,975 (51 percent) was attributable to damage to real and tangible personal property. Similarly, the jury found that

---

[9] Compare *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, ___, 111 S. Ct. 1032, 1042 (1991) (citing *Wilkes v. Wood,* 98 Eng.Rep. 489 (C.P. 1763), in which "The Lord Chief Justice [validated] exemplary damages as compensation, punishment, and deterrence") with *id.* at ___, 111 S. Ct. at 1044 (punitive damages under Alabama law imposed for purposes of retribution and deterrence) and *Embrey v. Holly,* 442 A.2d 966, 973 (Md. 1982) (punitive damages serve to deter and punish) with *Shell Oil Co. v. Parker,* 291 A.2d 64 (Md. 1972) (injury required for imposition of punitive damages); see also Prosser & Keeton, Torts, sec. 2, at 9 (5th ed. 1984) (punitive damages as means of compensating intangible harm and costs and attorney's fees).

Mrs. Horton had sustained compensatory damages of $41,287, of which $11,262 (27 percent) was attributable to personal injuries, and $30,025 (73 percent) to property damage. In the absence of any finding by the jury that the punitive damages were attributable to anything more specific than Union's generalized gross negligence, cf. *Commissioner v. Miller,* 914 F.2d 586, 589-590 (4th Cir. 1990), revg. and remanding 93 T.C. 330 (1989), the punitive damage award of $100,000 to Mr. Horton and $400,000 to Mrs. Horton could have been allocated between personal injuries and property damage in the same proportions that the jury allocated the compensatory damages.

I agree with the majority that, under section 104(a)(2), as in effect for 1985,[1] no part of the punitive damages attributable to personal injuries should be included in petitioners' gross income. Inasmuch as respondent did not raise the alternative argument for an allocation of the punitive damages, the Court should not do so sua sponte. Assuming, however, that Kentucky law permits punitive damages with respect to nonpersonal injuries, and that the jury award of punitive damages took account of those injuries, we could have considered and given effect to an allocation if the issue had been properly presented.

Allocating the punitive damages would not conflict with our decision in *Miller v. Commissioner,* 93 T.C. 330 (1989), revd. and remanded 914 F.2d 586 (4th Cir. 1990), or with the spirit of Congress' most recent amendment to section 104(a). Neither our opinion in *Miller* nor the recent amendment states that punitive damages received on account of nonpersonal injuries are excludable under section 104(a)(2). See *supra* note 1. The 1989 amendment removes from the operation of section 104(a)(2) "any punitive damages [received] in connection with a case not involving physical injury or physical sickness." It is clear that petitioners' case involved physical injuries. However, the language of the 1989

---

[1] As the majority note, sec. 104(a) was amended by the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7461, 103 Stat. 2106, 2379, so as not to apply to punitive damages received in connection with a case not involving physical injury or sickness. This amendment applies to punitive damages received after July 10, 1989. Majority op. p. 94 note 2. For a discussion of the 1989 amendment, see Henning, "Recent Developments in the Tax Treatment of Personal Injury and Punitive Damage Recoveries", 45 Tax Law. 783, 799-804 (1992) (apparently written before the Supreme Court's decision in *United States v. Burke,* 504 U.S. ___, 112 S. Ct. 1867 (1992)).

amendment restricts, rather than expands, the scope of section 104(a)(2). Although petitioners' case involved physical injuries, section 104(a)(2), as amended, does not exclude from gross income damages attributable to petitioners' nonpersonal injuries; i.e., their property losses. Section 104(a)(2) excludes only damages received on account of personal injuries or sickness; it has never excluded tort damages for nonpersonal injuries to real and tangible personal property, and does not do so now. Damage to such property is not a form of personal injury. See *Travelers Indem. Co. v. Chumbley,* 394 S.W.2d 418, 422 (Mo. Ct. App. 1965);[2] cf. *Riddle v. Commissioner,* 27 B.T.A. 1339 (1933).[3] I do not believe that any award or settlement received on account of damage to real and tangible personal property should be excluded from gross income under section 104(a)(2).

The applicable regulation does not change this conclusion. Section 1.104-1(c), Income Tax Regs., provides that

The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

This regulation only defines the term "damages received (whether by suit or agreement)" and does not equate "personal injury" with "tortious injury". Rather, the regulation provides that the term "damages received (whether by suit or agreement)" is defined by reference to tort law and the remedies available thereunder. See *United States v. Burke,* 504 U.S. ____, 112 S. Ct. 1867 (1992). While a cause of action or claim for harm to one's interests in real and tangible personal property may be based upon a tort or tort type right, money damages received on account of such a claim would not be received "on account of *personal* injuries or sickness" and therefore would not be excluded from gross income by section 104(a)(2). (Emphasis added.) Hence, personal injury is not properly defined as any injury that is tortious, but as

---

[2] "[T]orts are divided into two general classes, namely, 'property torts' which involve injury or damage to property, whether realty or personalty, and 'personal torts' which involve injuries to the person, whether to the body, reputation, or feelings." *Travelers Indem. Co. v. Chumbley,* 394 S.W.2d 418, 422 (Mo. Ct. App. 1965) (fn. refs. omitted).

[3] Respondent determined that damages for loss of personal property in the sinking of the *Lusitania* were taxable, but conceded the issue when petitioner showed that the award did not exceed the basis of the property.

tortious injury to the person, of which bodily harm is the clearest example. Although all of petitioners' injuries were tortious, not all of them were personal.

There is also a lurking question whether petitioners' compensatory damages should have been allocated between personal and nonpersonal injuries. While section 104(a)(2) does not exclude from gross income an award or settlement received on account of harm to real or tangible personal property, section 165(c)(3) provides a deduction for casualty losses, to the extent not compensated by insurance or otherwise, and section 1033 provides for nonrecognition of amounts received and reinvested as a result of involuntary conversion. However, the applicability of these provisions could not have been presented to us in this case because petitioners had apparently received their payments of compensatory damages in a prior taxable year.

---

WHALEN, *J.*, dissenting: The majority opinion reaffirms the expansive view of section 104(a)(2) which was advanced in *Miller v. Commissioner,* 93 T.C. 330 (1989), revd. 914 F.2d 586 (4th Cir. 1990). In that case, the majority permitted a taxpayer to exclude from gross income the full amount received in settlement of two defamation actions, in which the taxpayer had sought both compensatory and punitive damages, without considering the nature of the taxpayer's claims for punitive damages under Maryland law.

In this case, the majority permits petitioners to exclude from gross income an amount awarded by the jury as punitive damages without considering the nature of punitive damages under Kentucky law. In the State court action underlying this case, petitioners sued the local gas company for both personal injuries and property damage after their home was destroyed by an explosion of natural gas, which had leaked into the house from a break in the line. In addition to punitive damages of $500,000, the jury awarded aggregate compensatory damages for personal injuries in the amount of $41,552, and aggregate compensatory damages for property damage in the amount of $62,000.

I dissent here, as I did in *Miller,* because, in my view, the amount awarded to petitioners as punitive damages does not

constitute an amount received "on account of personal injuries or sickness" within the meaning of section 104(a)(2). Under general tort law principles and Kentucky law, the subject punitive damages were awarded "on account of" the gross negligence of the gas company, rather than on account of the personal injuries or the property damage which petitioners sustained.

Under general tort law principles,

Punitive damages "are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence." * * * [*International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 48 (1979) (quoting *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350 (1974)); fn. ref. omitted.]

See also *Molzof v. United States,* 502 U.S. ___, 112 S. Ct. 711, 715 (1992).

The same is true under Kentucky law. For example, in *Harrod v. Fraley,* 289 S.W.2d 203, 205 (Ky. 1956), the Kentucky court explained the nature of punitive damages in the following terms:

Exemplary or punitive damages are generally defined as damages which are given in enhancement merely of the ordinary damages *on account of* the wanton, reckless, malicious, or offensive character of the acts complained of by the plaintiff; 15 Am.Jur., Damages, Section 265. Such damages go beyond the actual damages suffered in the case; they are allowed as a punishment of the defendant and to discourage the defendant and others from similar conduct in the future. *Ashland Dry Goods Co. v. Wages,* 302 Ky. 577, 195 S.W.2d 312. Restatement of the Law of Torts, Section 908, Subsection (b). [*Emphasis added.*]

Similarly, in *Federal Kemper Ins. Co. v. Hornback,* 711 S.W.2d 844, 846 (Ky. 1986), Justice Vance of the Supreme Court of Kentucky explained the nature of punitive damages in his concurring opinion as follows:

The purpose of compensatory damages is to make the claimant whole and to allow him to recover all of the actual damage he has sustained. In cases where punitive damages are allowed, they constitute a windfall to an already fully compensated claimant.

Punitive damages represent a sum over and above the amount a claimant is entitled to receive as compensation for a loss suffered by him. In theory, they are allowed as a punishment of a defendant for outrageous conduct or to deter such conduct in the future.

See also *Hensley v. Paul Miller Ford, Inc.,* 508 S.W.2d 759, 763 (Ky. 1974); *Continental Ins. Cos. v. Hancock,* 507 S.W.2d 146, 151 (Ky. 1974); *Ashland Dry Goods Co. v. Wages,* 195 S.W.2d 312, 315 (Ky. 1946); *Great Atlantic & Pacific Tea Co. v. Smith,* 136 S.W.2d 759, 768 (Ky. 1940); *National Bond & Investment Co. v. Whithorn,* 123 S.W.2d 263, 266 (Ky. 1938).

A "slight variance" of the above principle is recognized in Kentucky based upon the fact that punitive damages are awarded to the injured party and, to that extent, are remuneration for the aggravated wrong. *Hensley v. Paul Miller Ford, Inc., supra* at 762-763. The Supreme Court of Kentucky made reference to this slight variance when it considered the gas company's appeal from the award of punitive damages in the underlying State court action. *Horton v. Union Light, Heat & Power Co.,* 690 S.W.2d 382, 390 (Ky. 1985). Nevertheless, it is evident from the discussion of punitive damages in that case, which is quoted by the majority, that the Kentucky Supreme Court recognizes the general tort law principle that punitive damages are awarded on account of the tort-feasor's conduct, "as a civil punishment upon the wrongdoer, rather than as indemnity to the injured party". Majority op. p. 100 (quoting *Horton v. Union Light, Heat & Power Co., supra*).

Moreover, punitive damages will not be awarded in Kentucky unless the plaintiff shows, beyond mere causation, that the tort was maliciously, wantonly, or wilfully committed by the tort-feasor. See *Holloway Construction Co. v. Smith,* 683 S.W.2d 248, 250 (Ky. 1984); *Harrod v. Fraley, supra* at 205. As explained in *Home Finance Co. v. Ratliff,* 374 S.W.2d 494, 496 (Ky. 1964) (quoting 15 Am. Jur., Damages, sec. 278):

"While every legal wrong entitles the party injured to recover damages sufficient to compensate for the injury inflicted, not every legal wrong entitles the injured party to recover exemplary damages. * * * It is universally recognized that punitive or exemplary damages, if recoverable at all, may be recovered only in cases where the wrongful act complained of is characterized by, or partakes of, some circumstances of aggravation, such as wilfulness, wantonness, malice, gross negligence or recklessness, oppression, contumely and indignity, outrageous conduct, insult, or gross fraud." [Internal citations omitted.]

Petitioners received their punitive damage award in the State court action on account of the gross negligence of the gas company. *Horton v. Union Light, Heat & Power Co.,*

*supra* at 388. In considering the gas company's appeal, the Kentucky Supreme Court outlined the specific requirements for an award of punitive damages in cases of gross negligence under that State's law:

In order to justify punitive damages there must first be a finding of failure to exercise reasonable care, and then *an additional finding* that this negligence was accompanied by "wanton or reckless disregard for the lives, safety *or property of others.*" [*Id.* at 389-390; emphasis added.]

The majority does not consider the nature of punitive damages under Kentucky law. It takes the position that there is no necessity to do so because the sole determinant for eligibility under section 104(a)(2) is whether the taxpayer's underlying claim was based upon a tort type personal injury. According to the majority:

The beginning and end of the inquiry should be whether the damages were paid on account of "personal injuries". This inquiry is answered by determining the nature of the underlying claim. * * * [Majority op. p. 96.]

On the subject of determining the nature of the underlying claim, the majority opinion states as follows:

the Supreme Court [in *United States v. Burke,* 504 U.S. ___, 112 S. Ct. 1867 (1992)] * * * focused on the nature of the underlying claim, rather than on the type of damages received. * * *

Relying on section 1.104-1(c), Income Tax Regs., the Supreme Court interpreted the words "damages received" as "an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights". *Id.* at ___, 112 S. Ct. at 1870. Therefore, if the taxpayer's underlying claim was based upon a tort type personal injury and the damages in question were received through prosecution of that claim, they are excludable. [Majority op. p. 97; citations omitted.]

Thus, the majority advances the sweeping proposition that all damages, whether compensatory or punitive, received through the prosecution of a suit involving a tort type personal injury are excludable under section 104(a)(2). According to the majority, its analysis on this point is based on the recent opinion of the Supreme Court in *United States v. Burke,* 504 U.S. ___, 112 S. Ct. 1867 (1992).

I agree that the existence of a personal injury for purposes of section 104(a)(2) is to be determined in accordance with the nature of the underlying claim. E.g., *id.* at ___, 112 S. Ct. at 1872; *Downey v. Commissioner,* 97 T.C. 150, 164

(1991); *Threlkeld v. Commissioner,* 87 T.C. 1294, 1305 (1986), affd. 848 F.2d 81 (6th Cir. 1988). However, I do not agree that exclusion under section 104(a)(2) is necessarily established simply by the fact that the nature of the underlying claim involves a tort type personal injury. In my view, the majority misconstrues the opinion of the Supreme Court in arriving at that conclusion, and disregards a second requirement for eligibility under section 104(a)(2), that the amount received be "on account of" personal injuries or sickness. Sec. 104(a)(2). Furthermore, I do not agree that the nature of a claim for punitive damages is to be determined without taking into consideration the nature of punitive damages under State law.

In order to place my disagreement with the majority in context, I start with the language of section 104(a)(2) and the regulations promulgated thereunder. Section 104(a)(2) provides that gross income does not include:

the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness;

The regulations promulgated under section 104(a)(2), section 1.104-1(c), Income Tax Regs., state as follows:

The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

Thus, the statute imposes at least two requirements for eligibility to exclude an amount from gross income. *Downey v. Commissioner, supra* at 159-160. First, the amount must have been received through prosecution of a "tort-like personal injury". See *United States v. Burke,* 504 U.S. at ____, 112 S. Ct. at 1872. Second, the amount at issue must have been paid "on account of" that injury. Sec. 104(a)(2). Petitioners must meet both requirements to qualify for the exclusion.

The Supreme Court's opinion in *United States v. Burke, supra,* on which the majority relies extensively, deals only with the first requirement, and not with the second. The issue before the Supreme Court was whether a payment received in settlement of a backpay claim for sex discrimina-

tion under title VII of the Civil Rights Act of 1964 is excludable from the recipient's gross income under section 104(a)(2). In considering that issue, the Court focused on section 1.104-1(c), Income Tax Regs., quoted above, and our opinion in *Threlkeld v. Commissioner, supra,* which had held that the "'essential element of an exclusion under section 104(a)(2) is that the income involved must derive from some sort of tort claim against the payor'". *United States v. Burke,* 504 U.S. at ___, 112 S. Ct. at 1870 (quoting *Threlkeld v. Commissioner, supra* at 1305). Based upon those authorities, the Supreme Court set about to determine whether a backpay claim under title VII was tortlike in nature.

In order to make that determination, the Supreme Court compared the remedies available under title VII with the damages available in a common law tort action. It found that the "remedial scheme" under title VII, consisting "of restoring victims, through backpay awards and injunctive relief, to the wage and employment positions they would have occupied absent the unlawful discrimination", bore no similarity to the "common-law tradition of broad tort damages", consisting of both compensatory and punitive damages. *Id.* at ___, 112 S. Ct. at 1873 and 1874. Therefore, the Court concluded that the remedial scheme under title VII did not redress a tortlike personal injury, and the Court held that the amounts at issue were not excludable from gross income under section 104(a)(2). *Id.* at ___, 112 S. Ct. at 1874.

I note that in framing the issue to be decided, the Supreme Court stated that the taxpayers "must show that title VII, the legal basis for their recovery of backpay, redresses a tortlike *personal injury*". *Id.* at ___, 112 S. Ct. at 1872 (emphasis supplied). In considering that issue, the Court analyzed the damages available to "the victim of a physical injury" and the damages available to "the victim of a 'dignitary' or nonphysical tort". *Id.* at ___ n.6, 112 S. Ct. at 1871 n.6. Finally, after concluding that the remedial scheme under title VII was not tortlike, the Court concluded:

Thus, we cannot say that a statute such as Title VII, whose sole remedial focus is the award of backwages, redresses a tort-like *personal injury* within the meaning of §104(a)(2) and the applicable regulations. [*Id.* at ___, 112 S. Ct. at 1874; fn. refs. omitted; emphasis added.]

Notwithstanding these and other references to "personal injury", however, the holding of the Supreme Court in *United States v. Burke, supra,* was based on the taxpayers' failure to prove that the remedies available under title VII of the Civil Rights Act were tortlike in nature. Thus, the Court concluded that the harm addressed by title VII was not a "tortlike personal injury". It was not necessary for the Supreme Court to consider whether the remedies had been paid "on account of" any personal injuries that may have been sustained. Justice Scalia recognized the limited basis of the Court's holding when he stated as follows in his concurring opinion:

The Court accepts at the outset of its analysis the Internal Revenue Service regulation (dating from 1960) that identifies "personal injuries" under this exclusion with the violation of, generically, "tort or tort type rights," 25 Fed. Reg. 11490 (1960); 26 CFR §1.104-1(c) (1991). * * * Thereafter, the opinion simply considers the criterion for determining whether "tort or tort type rights" are at stake, the issue on which it disagrees with the dissent. [*Id.* at ____, 112 S. Ct. at 1875 (Scalia, J., concurring); fn. refs. omitted.]

Similarly, Justice O'Connor correctly noted the limited basis of the Court's holding when she stated as follows in her dissenting opinion:

The Court holds that respondents, unlike most plaintiffs who secure compensation after suffering personal injury, must pay tax on their recoveries for alleged discrimination because suits under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 Stat. §2000e et seq., do not involve "tort type rights." * * * [*Id.* at ____, 112 S. Ct. at 1878 (O'Connor, J., dissenting).]

I submit that the majority misconstrues the Supreme Court's opinion in *United States v. Burke, supra,* in two significant respects. First, the Supreme Court did not hold, expressly or by implication, as suggested by the majority, that "if the taxpayer's underlying claim was based upon a tort type personal injury", then *all* damages received through prosecution of the claim are excludable under section 104(a)(2). Majority op. p. 97. To the contrary, the Supreme Court merely held that the taxpayer had not suffered a tortlike personal injury under section 104(a)(2). The majority's error consists not only of failing to properly apply the second ("on account of") requirement in this case, but also of

formulating the test for eligibility under section 104(a)(2) in a way which suggests that the second requirement does not exist.

The majority misconstrues the opinion of the Supreme Court in *United States v. Burke, supra,* in a second important respect. The majority opinion states that "the Supreme Court * *· * focused on the nature of the underlying claim, rather than on the type of damages received." Majority op. p. 97. The majority opinion thereby suggests that once we determine that the nature of the underlying claim is a tortlike personal injury, we need not further inquire into the type of damages received; i.e., whether anything in addition to compensatory damages was received. The majority cites a District Court case in which that seems to be the thrust of the court's opinion. *O'Gilvie v. United States,* 70 AFTR 2d 92-5069, 92-2 USTC par. 50,344 (D. Kan. 1992).

However, the Supreme Court's opinion does not suggest that the type of damages awarded plays no role in determining the excludability of such damages. In fact, to the contrary, the Supreme Court determined the nature of the title VII discrimination claim at issue in that case by analyzing the "remedial scheme" under title VII. *United States v. Burke,* 504 U.S. at ____, 112 S. Ct. at 1873. Indeed, the majority opinion itself points out:

The [Supreme] Court held that "consideration of the remedies available * * * is critical in determining the 'nature of the statute' and the 'type of claim'", [504 U.S.] at ____ n.7, 112 S. Ct. at 1872 n.7, and observed that in tort actions "punitive or exemplary damages are generally available in those instances where the defendant's misconduct was intentional or reckless." *Id.* at ____, 112 S. Ct. at 1872 (citing *Molzof v. United States,* 502 U.S. ____, 112 S. Ct. 711 (1992)). The Supreme Court's analysis establishes that punitive damages are not merely an incidental result of a personal injury claim as suggested by the Fourth Circuit. Rather, they are "inextricably bound up" with the concept of tort type rights, *id.* at ____ n.7, 112 S. Ct. at 1872 n.7, and therefore one of the prime determinants of whether a claim is for personal injury. As one of the hallmarks of traditional tort claims, it is logical to conclude that punitive damages are received "on account of" such claims. [Majority op. p. 99; fn. ref. omitted.]

Thus, as the majority correctly notes, the Supreme Court found it helpful in defining a tort suit to note that, generally, such suits may produce both compensatory and punitive damages. However, the Supreme Court did not suggest, as

inferred by the majority, that punitive damages are undifferentiated from compensatory damages. In my view, an underlying claim may be a tort claim, or at least tortlike, but it may also be a claim for more than one type of damages.

I would further note that not every tort involves "personal injuries or sickness", within the meaning of section 104(a)(2). To the contrary, there are many torts, such as trespass, which do not involve "personal injuries or sickness", as that phrase is used in section 104(a)(2). In my view, damages received on account of one of those torts are not covered by the exclusion.

For example, in this case, petitioners received compensatory damages of $62,000 as a result of the property damage to their house and its contents, over $20,000 more than the amount which they received for personal injuries. I do not believe that the amount received for property damages is eligible to be excluded from gross income under section 104(a)(2). In my view, that amount was not received "on account of personal injuries or sickness" within the meaning of section 104(a)(2), and does not qualify for exclusion. I suspect that the majority would agree with me on that point. Indeed, the majority opinion makes clear that respondent makes no argument on that point and that the majority expresses no view on it. Majority op. p. 95 note 3.

If the amount received by petitioners for property damage does not automatically qualify for the exclusion under section 104(a)(2), the same should be true of the punitive damages at issue in this case. In both cases, it is not enough that the underlying claim for which they were received involves a tort type personal injury, in whole or in part. Petitioners must also prove eligibility under the second requirement that the amounts received were paid "on account of" the personal injuries sustained.

For the reasons discussed above, I believe that the majority's analysis of the opinion of the Supreme Court in *United States v. Burke, supra,* is seriously flawed. Beyond that, the majority opinion adds little to the debate regarding the eligibility of punitive damages for exclusion under section 104(a)(2). That debate is ably joined by our opinion in *Miller v. Commissioner,* 93 T.C. 330 (1989), which I believe is wrong, and the opinion of the Court of Appeals for the

Fourth Circuit in that case, 914 F.2d 586 (4th Cir. 1990), which I believe is correct.

A final point should be noted. While I believe that the holding in *United States v. Burke, supra,* is not applicable to this case, there is a lesson to be learned from the Supreme Court's opinion which was overlooked by the majority. By rejecting the expansive application of section 104(a)(2) which had been adopted by the Court of Appeals in that case, the Supreme Court's opinion is a clarion call to lower courts to restore the proper balance between the definition of gross income in section 61(a), which is to be interpreted broadly, and exemptions from income, which are to be narrowly construed. The opinion of the Court states as follows:

> The definition of gross income under the Internal Revenue Code sweeps broadly. Section 61(a), 26 U.S.C. §61(a), provides that "gross income means all income from whatever source derived," subject only to the exclusions specifically enumerated elsewhere in the Code. As this Court has recognized, Congress intended through §61(a) and its statutory precursors to exert "the full measure of its taxing power," *Helvering v. Clifford,* 309 U.S. 331, 334, 60 S. Ct. 554, 556, 84 L.Ed. 788 (1940), and to bring within the definition of income any "accessio[n] to wealth." \* \* \* *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 431, 75 S. Ct. 473, 477, 99 L.Ed. 483 (1955). [*Id.* at ___, 112 S. Ct. at 1870.]

In his concurring opinion, Justice Scalia touches on the same issue in the following words:

> the provision at issue here is a tax *exemption,* a category of text for which we have adopted a rule of narrow construction, see, e.g., *United States v. Centennial Savings Bank FSB,* 499 U.S. ___, ___, 111 S. Ct. 1512, 1519, 113 L.Ed.2d 608 (1991). [*Id.* at ___, 112 S. Ct. at 1876 (Scalia, J., concurring); fn. ref. omitted.]

Finally, Justice Souter, in his concurring opinion, also touches on this point:

> the outcome in this case follows from the default rule of statutory interpretation that exclusions from income must be narrowly construed. See *United States v. Centennial Savings Bank FSB,* 499 U.S. ___, ___, 111 S. Ct. 1512, 1519, 113 L.Ed.2d 608 (1991); *Commissioner v. Jacobson,* 336 U.S. 28, 49, 69 S. Ct. 358, 369, 93 L.Ed. 477 (1949). That is, an accession to wealth is not to be held excluded from income unless some provision of the Internal Revenue Code clearly so entails. \* \* \* [*Id.* at ___, 112 S. Ct. at 1878 (Souter, J., concurring).]

For the foregoing reasons, I respectfully dissent.

JACOBS and HALPERN, *JJ.,* agree with this dissent.