BURNES P. DOWNEY AND MARJORIE DOWNEY, PETITIONERS
*v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT *

Docket No. 11120–89.          Filed June 29, 1993.

*Steven E. Reick,* for petitioners.
*Marjorie A. Gilbert, James F. Hanley, Jr.,* and *Jan E. Lamartine,* for respondent.

---

* This opinion supplements our previous opinion, 97 T.C. 150 (1991).

## SUPPLEMENTAL OPINION

RUWE, *Judge:* This case is before the Court on respondent's motion to reconsider our opinion in *Downey v. Commissioner,* 97 T.C. 150 (1991), in light of the Supreme Court's decision in *United States v. Burke,* 504 U.S. ___, 112 S. Ct. 1867 (1992). In our previous opinion, we held that the entire amount received by petitioner Burns P. Downey in settlement of a suit brought under the Age Discrimination in Employment Act of 1967 (ADEA), Pub. L. 90-202, 81 Stat. 602 (current version at 29 U.S.C. secs. 621-634 (1988)), was excludable under section 104(a)(2).[1]

The issue in *United States v. Burke, supra,* was whether an award of backpay based on a sex discrimination claim under title VII was excludable under section 104(a)(2). The Supreme Court held that only damages received on account of a claim that redresses a tortlike personal injury are excludable under section 104(a)(2). *Id.* at ___, 112 S. Ct. at 1872. The mere fact that discrimination caused harm to its victim does not mean that it was a tortlike personal injury for purposes of section 104(a)(2).

It is beyond question that discrimination in employment on the basis of sex, race, or any of the other classifications protected by Title VII is, as respondents argue and this Court consistently has held, an invidious practice that causes grave harm to its victims. The fact that employment discrimination causes harm to individuals does not automatically imply, however, that there exists a tort-like "personal injury" for purposes of federal income tax law. [*Id.* at ___, 112 S. Ct. at 1872-1873; citations omitted.]

With respect to whether a sex discrimination claim under title VII was a tortlike personal injury claim, the Supreme Court stated:

No doubt discrimination could constitute a "personal injury" for purposes of § 104(a)(2) *if* the relevant cause of action evidenced a tort-like conception of injury and remedy. * * * [*Id.* at ___, 112 S. Ct. at 1873; emphasis added.]

The Supreme Court found that one of the hallmarks of traditional tort liability was the availability of a broad range of damages to compensate the victim. These included dam-

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

ages for intangible elements of injury that were not pecuniary in their immediate consequences. The Court also found that punitive or exemplary damages are generally available in tort actions where the defendant's conduct was intentional or reckless. *Id.* at ____, 112 S. Ct. at 1871, 1872. In deciding whether a title VII claim evidenced a tortlike conception of injury and remedy, the Supreme Court focused on the remedies "available" under the statutory provisions of title VII. *Id.* at ____, 112 S. Ct. at 1871-1874.[2] The Supreme Court found that

in contrast to the tort remedies for physical and nonphysical injuries discussed above, Title VII does not allow awards for compensatory or punitive damages; instead, it limits available remedies to backpay, injunctions, and other equitable relief. * * * [*Id.* at ____, 112 S. Ct. at 1873.[3]]

Because of the limited remedy provided by title VII, the Supreme Court concluded:

Thus, we cannot say that a statute such as Title VII, whose sole remedial focus is the award of backwages, redresses a tort-like personal injury within the meaning of sec. 104(a)(2) and the applicable regulations. [*Id.* at ____, 112 S. Ct. at 1874; fn. refs. omitted.[4]]

---

[2] Justice O'Connor's dissent criticized the majority for focusing on the available statutory remedies. The majority provided the following response:

The dissent nonetheless contends that we "misapprehen[d] the nature of the inquiry required by sec. 104(a)(2) and the IRS regulation" by "[f]ocusing on [the] remedies" available under Title VII. * * * As discussed above, however, the concept of a "tort" is inextricably bound up with remedies—specifically damages actions. Thus, we believe that consideration of the remedies available under Title VII is critical in determining the "nature of the statute" and the "type of claim" brought by respondents for purposes of sec. 104(a)(2). * * * [*United States v. Burke,* 504 U.S. ____, ____, 112 S. Ct. 1867, 1872 n.7 (1992); citations omitted.]

[3] The Supreme Court made the following comparisons:

Indeed, the circumscribed remedies available under Title VII stand in marked contrast not only to those available under traditional tort law, but under other federal antidiscrimination statutes, as well. For example, 42 U.S.C. sec. 1981 permits victims of race-based employment discrimination to obtain a jury trial at which "both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages may be awarded." The Court similarly has observed that Title VIII of the Civil Rights Act of 1968, whose fair housing provisions allow for jury trials and for awards of compensatory and punitive damages, "sounds basically in tort" and "contrasts sharply" with the relief available under Title VII. [*Id.* at ____, 112 S. Ct. at 1873-1874; citations and fn. ref. omitted.]

[4] Subsequent to the title VII claim at issue in *United States v. Burke, supra,* title VII was amended to allow recovery of future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, as well as punitive damages. See Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1073. With respect to this amendment, the Supreme Court stated:

we believe that Congress' decision to permit jury trials and compensatory and punitive damages under the amended act signals a marked change in its conception of the injury redressable by Title VII * * * [*United States v. Burke,* 504 U.S. at ____, 112 S. Ct. at 1874 n.12.

The issue we must decide is whether Mr. Downey's discrimination claim under the ADEA constitutes a tortlike personal injury claim for purposes of section 104(a)(2). If the answer is yes, any damages received on account of that claim are excludable. *Horton v. Commissioner,* 100 T.C. 93, 97 (1993).

In contrast to title VII, the ADEA offers a range of remedies, including both unpaid wages and "liquidated damages". Liquidated damages under the ADEA have been held to "serve both a compensatory and a deterrent or punitive function." *Downey v. Commissioner, supra* at 172; *Rickel v. Commissioner,* 92 T.C. 510, 521 (1989), revd. on other grounds 900 F.2d 655 (3d Cir. 1990). "Liquidated damages" under the ADEA serve to compensate the victim of age discrimination for certain nonpecuniary losses. *Downey v. Commissioner, supra* at 170. This is a remedy traditionally associated with tort claims. *United States v. Burke,* 504 U.S. at ___, 112 S. Ct. at 1873. The fact that "liquidated damages" also serve a deterrent or punitive purpose further supports the conclusion that a claim under the ADEA is tortlike. Indeed, the Supreme Court in *Burke* noted that punitive or exemplary damages are generally available in tort actions where the defendant's misconduct was intentional or reckless. *Id.* at ___, 112 S. Ct. at 1871, 1872;[5] see *Horton v. Commissioner, supra* (holding punitive damages received on account of personal injury excludable under section 104(a)(2)).

We hold that the ADEA compensation scheme evidences a tortlike conception of injury and remedy. It follows that discrimination under the ADEA constitutes a tortlike personal injury for purposes of section 104(a)(2), and all damages received by Mr. Downey on account of his ADEA claim are excludable from income. See *Horton v. Commissioner, supra.* We therefore reaffirm our original holding in this case.

*Decision will be entered under Rule 155.*

---

[5] A claimant under the Age Discrimination in Employment Act of 1967 (ADEA), Pub. L. 90-202, 81 Stat. 602 (current version at 29 U.S.C. secs. 621-634 (1988)), also has the right, like ordinary tort plaintiffs, to a jury trial "of any issue of fact." 29 U.S.C. sec. 626(c)(2). By contrast, the Supreme Court noted in Burke that

the Courts of Appeals have held that Title VII plaintiffs, *unlike ordinary tort plaintiffs,* are not entitled to a jury trial. ' * * [United States v. Burke, 504 U.S. at ___, 112 S. Ct. at 1872; emphasis added.]

Reviewed by the Court.

HAMBLEN, PARKER, SHIELDS, CLAPP, SWIFT, GERBER, PARR, WELLS, COLVIN, and CHIECHI, *JJ.,* agree with the majority.

---

COHEN, *J.,* concurring in the result: I dissented in *Downey v. Commissioner,* 97 T.C. 150, 174 (1991) (Downey I), and I continue to believe that the result reached by the majority in that opinion is wrong. I would hold in this case that only the liquidated damages were received on account of the tort of willful discrimination and that the back wages were received on account of nontortious breach of the implied terms of the taxpayer's employment. See Downey I, 97 T.C. at 177-178 (Cohen, J., concurring in part and dissenting in part).

I do not believe that *United States v. Burke,* 504 U.S. ___, 112 S. Ct. 1867 (1992), supports the result reached by the majority. The majority opinion refers to a "range of remedies, including both unpaid wages and 'liquidated damages'." Majority op. p. 637. Two categories of statutory remedies do not strike me as constituting a range. In actions brought under the Age Discrimination in Employment Act of 1967 (ADEA), Pub. L. 90-202, 81 Stat. 602 (current version at 29 U.S.C. secs. 621-634 (1988)), the Courts of Appeals have unanimously denied damages for pain and suffering and emotional distress—typical tort remedies. See, e.g., *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1144 (5th Cir. 1991); *Haskell v. Kaman Corp.,* 743 F.2d 113, 120-121 n.2 (2d Cir. 1984), and cases cited therein. Moreover, under *Burke,* if a plaintiff alleging wrongful termination of employment is only entitled to back wages, that award is taxable. Under this case, if such a plaintiff either proves willfulness or by settlement receives twice the amount of back wages, none of the award is taxable. The Supreme Court in *Burke* held that an award of back wages was taxable; nothing in that opinion states that adding liquidated damages to such an award makes the total nontaxable. Without a clearer indication from the Supreme Court, I cannot agree that this anomalous result is correct.

I concur here, however, because I believe that *United States v. Burke, supra,* does not provide a clear-cut reason for changing the result in Downey I, and all presently extant

authorities dealing specifically with ADEA claims support petitioners' position. See *Redfield v. Insurance Co. of North America,* 940 F.2d 542 (9th Cir. 1991); *Pistillo v. Commissioner,* 912 F.2d 145 (6th Cir. 1990), revg. T.C. Memo. 1989-329; *Rickel v. Commissioner,* 92 T.C. 510 (1989), affd. in part and revd. in part 900 F.2d 655 (3d Cir. 1990).

---

HALPERN, *J.,* concurring: The issue is whether petitioner Burns P. Downey's claim under the Age Discrimination in Employment Act of 1967 (ADEA), Pub. L. 90-202, 81 Stat. 602 (current version at 29 U.S.C. secs. 621-634 (1988)), was for a "tort-like personal injury" for purposes of section 104(a)(2). The majority answers that question in the affirmative, and I agree. The majority goes much further, however, opining that *all* claims under the ADEA meet that standard, including claims that, in my view, are dissimilar to Mr. Downey's in pertinent respects. I believe the majority's rationale to be overbroad and therefore respectfully cannot join.

Section 104(a)(2) excludes from gross income "damages received * * * on account of personal injuries or sickness". In order for a receipt to be excluded from gross income by section 104(a)(2), the following requirements must be satisfied: (1) The receipt must constitute "damages", meaning an amount obtained through an action or settlement based on tort or *tort type* rights, sec. 1.104-1(c), Income Tax Regs.; (2) there must be a *personal injury;* and (3) the damages must have been received *on account of* such personal injury. The Supreme Court, in *United States v. Burke,* 504 U.S. ____, 112 S. Ct. 1867 (1992), created a convenient shorthand for these requirements, stating that, to be excludable under section 104(a)(2), an amount must have been received on account of a "tort-like personal injury".

The Supreme Court held that, in determining whether an injury is tortlike, we must consider the remedies available under the cause of action at issue.

No doubt discrimination could constitute a "personal injury" for purposes of § 104(a)(2) if the relevant cause of action evidenced a tort-like conception of injury and remedy. * * * [*Id.* at ____, 112 S. Ct. at 1873.]

With respect to whether a cause of action evidences a tortlike conception of injury and remedy, the majority properly observes that "one of the hallmarks of traditional tort liability was the availability of a broad range of damages to compensate the victim." Majority op. p. 635. Accordingly, the majority inquires whether the remedies available to Mr. Downey under the ADEA were sufficiently broad to render his injury "tort-like", as that term is used in *Burke.* The majority holds that they were, primarily on the ground that the liquidated damages received by Mr. Downey under the ADEA served to compensate him for his nonpecuniary losses, and also because such liquidated damages serve a deterrent or punitive purpose. Majority op. p. 637. I agree. The majority apparently further concludes that, *in all instances,* the remedies available under the ADEA are sufficiently broad as to evidence "a tortlike conception of injury and remedy" and that, therefore, *in all instances* "discrimination under the ADEA constitutes a tortlike personal injury". Majority op. p. 638. Those latter conclusions are the key points on which I disagree with the majority.

## I. *Remedies Available Under the ADEA*

The majority states that "In contrast to title VII, the ADEA offers a range of remedies, including both unpaid wages and 'liquidated damages'." Majority op. p. 637. That assertion, however, is overbroad. ADEA section 7(b) provides that a prevailing plaintiff is entitled to liquidated damages *"only* in cases of *willful* violations". 29 U.S.C. sec. 626(b) (emphasis added). Accordingly, any victim of *non*willful age discrimination bringing a claim under the ADEA does *not* have available to him the remedy of liquidated damages.[1] In fact, the only remedy available to such victim would be a claim for unpaid wages, which remedy has been held insufficient to render an injury "tort-like". *United States v. Burke, supra.*

---

[1] The Supreme Court recently has had occasion to deal with the Age Discrimination in Employment Act of 1967 (ADEA), Pub. L. 90-202, 81 Stat. 602 (current version at 29 U.S.C. secs. 621-634 (1988)). *Hazen Paper Co. v. Biggins,* 507 U.S. ___, 113 S. Ct. 1701 (1993). One issue dealt with was the meaning of the term "willful" in ADEA sec. 7(b). By way of introduction to its discussion of that issue, the Court recapitulated what it had said in an earlier case (*Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111 (1985)) concerning the structure of the ADEA: "Congress aimed to create a 'two-tiered liability scheme', under which some but not all ADEA violations would give rise to liquidated damages." *Hazen Paper Co. v. Biggins.* 507 U.S. ___, 113 S. Ct. at 1708.

## II. *Analysis*

As noted, liquidated damages under the ADEA are unavailable whenever willfulness is not proved. The majority opinion, in my view, is unsatisfactory because it fails to consider the significance of that observation. I believe the significance of that observation to be that the ADEA implicitly creates *two mutually exclusive causes of action*: One for willful discrimination, and one for nonwillful discrimination. A cause of action for willful discrimination, permitting the recovery of liquidated damages, would evidence a tortlike conception of injury and remedy for the reasons given by the majority. A cause of action for nonwillful discrimination, however, would not—because it would, in relevant respects, be indistinguishable from title VII (neither allows any remedy other than the recovery of unpaid wages).

It might be argued that, were we to distinguish between claims for willful and nonwillful discrimination, we would be "'rummaging through the taxpayer's prayers for relief in order to determine the nature of his claim'", thereby attempting to "'simply [define] the nature of the taxpayer's injury by reference to its nonpersonal consequences' (such as lost wages)." *Downey v. Commissioner,* 97 T.C. 150, 167 (1991) (quoting *Rickel v. Commissioner,* 900 F.2d 655, 661-662 (3d Cir. 1990), affg. in part and revg. in part 92 T.C. 510 (1989)). That argument, however, would miss the mark, inasmuch as it is the willfulness of the discrimination-inflicting party—the actor, rather than the acted upon—that separates willful from nonwillful discrimination, and gives rise to disparate remedies for what, arguably, is the same injury, viz, discrimination.

Likewise, it is not the quantum of suffering visited upon the victim of age discrimination that separates recompense for willful discrimination from recompense for nonwillful discrimination under the ADEA. A nonwillfully discriminated-against plaintiff under the ADEA may have suffered the same lost wages and consequential damages as a willfully discriminated-against plaintiff. Nevertheless, the statute only allows the nonwillfully discriminated-against plaintiff one-half the recovery allowed the willfully discriminated-against plaintiff. Such a distinction, based on willfulness, is common; indeed, a distinction based on intent is one of the most basic organiz-

ing concepts of legal thinking. Prosser & Keaton, Law of Torts 33 (5th ed. 1984). Intent is the key distinction between two major divisions of legal liability—negligence and intentional torts—and it plays a key role in criminal law, and elsewhere. *Id.* With regard to willful discrimination under the ADEA, the Supreme Court has accepted that, in that context, the term "willful" means conduct that is "not merely negligent". *Hazen Paper Co. v. Biggins,* 507 U.S. ____, 113 S. Ct. 1701, 1708 (1993). No matter how severe the consequences of nonwillful discrimination, Congress has not thought it appropriate to make liquidated damages available for recompense thereof under the ADEA. The fundamental difference in treatment of willful and nonwillful discrimination under the ADEA should be accepted as sufficient to demonstrate the existence of two distinct (and mutually exclusive) causes of action. Certainly, if Congress had explicitly created different statutes dealing with, respectively, willful and nonwillful age discrimination, it would be quite easy to perceive that two distinct (and mutually exclusive) causes of action are involved; that Congress chose to draw that distinction implicitly, rather than explicitly, ought be of no moment. To conclude otherwise would be to elevate form over substance, which clearly would be inappropriate.

## III. *Conclusion*

Liquidated damages under the ADEA are not available in cases of nonwillful discrimination. The majority, for some unarticulated reason, considers that fact irrelevant, notwithstanding that its holding is dependent upon its finding that "the ADEA offers a range of remedies, including both unpaid wages and 'liquidated damages'." Majority op. p. 637. I disagree with the majority, and would conclude that (1) the ADEA creates distinct causes of action for willful and nonwillful age discrimination, (2) where the cause of action is for nonwillful age discrimination, the remedy of liquidated damages is not available, and (3) a cause of action for nonwillful discrimination, lacking remedies broader than those available under title VII, does not evidence a tortlike conception of injury and remedy and therefore does not redress a "tort-like personal injury" within the meaning of *United States v. Burke,* 504 U.S. ____, 112 S. Ct. 1867 (1992).

Because Mr. Downey's cause of action was for *willful* discrimination, for which injury the sufficiently broad remedy of liquidated damages *is* available, I concur in the result reached by the majority.

WHALEN and BEGHE, *JJ.,* agree with this concurring opinion.

------

LARO, *J.,* concurring in part and dissenting in part: This case is before us pursuant to respondent's motion for reconsideration of our prior opinion in *Downey v. Commissioner,* 97 T.C. 150 (1991) (Downey I). In light of the Supreme Court's recent decision in *United States v. Burke,* 504 U.S. ___, 112 S. Ct. 1867 (1992), respondent requested us to reconsider our earlier opinion in Downey I. Respondent's motion has been granted.

In *Burke,* the Supreme Court held that payments received by taxpayers in settlement of backpay claims under title VII of the Civil Rights Act of 1964 (title VII), Pub. L. 88-352, 78 Stat. 253 (current version at 42 U.S.C. secs. 2000e-2000e-17 (1988)), are not excludable from gross income under section 104(a)(2). *United States v. Burke,* 504 U.S. at ___, 112 S. Ct. at 1874. In Downey I, we held, by a split (11-6) vote, that both the nonliquidated damages and liquidated damages received by Burns P. Downey (petitioner)[1] in settlement of his claims under the Age Discrimination in Employment Act of 1967, Pub. L. 90-202, 81 Stat. 602 (current version at 29 U.S.C. secs. 621-634 (1988)), were excludable from his gross income under section 104(a)(2). The nonliquidated damages were received by petitioner as unpaid minimum wages (backpay). 29 U.S.C. secs. 216(b), 626(b). The liquidated damages were received by petitioner as an "additional equal amount" on account of a willful violation of the ADEA by petitioner's employer (United). 29 U.S.C. secs. 216(b), 626(b).

Following our reconsideration of Downey I, the majority reaffirms the case's expansive view of section 104(a)(2), notwithstanding the decision in *Burke.* I agree with my colleagues in the majority to the extent they reaffirm that the settlement proceeds received by petitioner as liquidated dam-

------

[1] The wife of Burns P. Downey, Marjorie Downey, is also a petitioner in this case. For purposes of simplicity and clarity, petitioner will be used solely to refer to Burns P. Downey.

ages are excludable from his taxable income under section 104(a)(2). I respectfully part company with them, however, with respect to the taxability of the nonliquidated damages because I believe the dissent in Downey I reached the correct conclusion with respect to the nonliquidated damages, and the dissent's conclusion is strengthened by the decision in *Burke.* The dissent in Downey I concluded that section 104(a)(2) does not exclude from taxation the amounts that petitioner received as nonliquidated damages. Downey I, *supra* at 174.

Section 61(a) generally provides that "Except as otherwise provided in [subtitle A of the Internal Revenue Code, see secs. 1 to 1563], gross income means all income from whatever source derived". In enacting section 61(a), and its statutory predecessors, Congress intended to "use the full measure of its taxing power". *Helvering v. Clifford,* 309 U.S. 331, 334 (1940).

It is well settled that the definition of gross income under section 61(a) is construed broadly to bring within its definition any accessions to wealth realized by taxpayers, and over which the taxpayers have complete dominion. *United States v. Burke,* 504 U.S. at ___, 112 S. Ct. at 1870; *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 431 (1955). It is equally well settled that the exclusions from gross income, such as the ones contained in subtitle A of the Internal Revenue Code, are matters of legislative grace and are construed narrowly to maximize the taxation of any accession to wealth. *United States v. Burke,* 504 U.S. at ___, 112 S. Ct. at 1878 (Souter, J., concurring in the judgment); *United States v. Centennial Sav. Bank FSB,* 499 U.S. 573, ___, 111 S. Ct. 1512, 1519 (1991); *Commissioner v. Jacobson,* 336 U.S. 28, 49 (1949). It rightfully follows that an accession to wealth, such as the receipt of the settlement proceeds by petitioner, must be included in the broad definition of gross income under section 61(a) unless a narrowly construed exclusion of subtitle A of the Internal Revenue Code clearly directs otherwise. *United States v. Burke,* 504 U.S. at ___, 112 S. Ct. at 1878 (Souter, J., concurring in the judgment).

It is undisputed that, but for an exclusion, all the settlement proceeds received by petitioner would be includable in the broad definition of gross income under section 61(a). The controversy is whether any, or all, of the settlement proceeds

fall within the narrowly construed exclusion under section 104(a)(2). To the extent that petitioner's receipt of the settlement proceeds is not *clearly* within this narrowly construed exclusion, general rules of statutory construction mandate that the proceeds are taxable under section 61(a). *United States v. Centennial Sav. Bank FSB,* 499 U.S. at ___, 111 S. Ct. at 1519; *Commissioner v. Jacobson, supra* at 49.

Section 104(a)(2) generally provides that gross income does not include "the amount of any *damages received* (whether by suit or agreement * * *) *on account of personal injuries* or sickness" (emphasis added). The text of section 104, the legislative history thereunder, and the regulations prescribed thereunder do not define the term "personal injuries". See, e.g., H. Rept. 1337, 83d Cong., 2d Sess. 15 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 15-16 (1954). The term "damages received" was defined by the Treasury Department, in regulations published in 1956 under section 104(a)(2), as an "amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." T.D. 6169, 1956-1 C.B. 63, 65. To date, this regulatory definition remains the same as when it was originally published.

From section 104(a)(2), and the regulations thereunder, we understand that damages received through prosecution of a legal suit or action, or through a settlement agreement entered into in lieu of such prosecution, are excludable from gross income if the: (1) Damages were received on account of personal injuries, and (2) suit or action was based upon tort or tort type rights. Sec. 104(a)(2); sec. 1.104-1(c), Income Tax Regs. From *Burke,* we learn, once again, that we look to the nature of the claim underlying a taxpayer's damage award to determine whether the damages were received on account of personal injuries. *United States v. Burke,* 504 U.S. at ___, 112 S. Ct. at 1872; see also *Rickel v. Commissioner,* 92 T.C. 510, 516 (1989), affd. in part and revd. in part 900 F.2d 655 (3d Cir. 1990), overruled by *Downey v. Commissioner,* 97 T.C. 150, 168-169 (1991); *Metzger v. Commissioner,* 88 T.C. 834, 847 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988); *Threlkeld v. Commissioner,* 87 T.C. 1294, 1297 (1986), affd. 848 F.2d 81 (6th Cir. 1988); *Fono v. Commissioner,* 79 T.C. 680, 694 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984). This determination is fac-

tual, and petitioner bears the burden of proving that respondent's determination is incorrect. Rule 142(a); *Welch v. Helvering,* 290 U.S. 111, 115 (1933).

In the case of a settlement, the nature of the claim generally is determined by looking to the settlement agreement. When the settlement agreement explicitly allocates the settlement proceeds between contract and tort claims,[2] the allocation generally is binding to the extent that it is entered into by the parties at arm's length and in good faith. *Fono v. Commissioner, supra* at 694. In this regard, an important factor in determining the reality of the agreement is the "intent of the payor" as to the reason for making the payment. *Knuckles v. Commissioner,* 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; *Metzger v. Commissioner, supra* at 847-848; *Fono v. Commissioner, supra* at 694. The main question to ask is "In lieu of *what* were the damages awarded?" *Raytheon Prod. Corp. v. Commissioner,* 144 F.2d 110, 113 (1st Cir. 1944), affg. 1 T.C. 952 (1943) (emphasis added); *Fono v. Commissioner, supra* at 692.

Applying this analysis to the instant case, petitioner brought a lawsuit against United alleging age discrimination under the ADEA. In relevant part, petitioner's complaint contained two "causes of action".[3] With respect to the first cause of action, petitioner's complaint alleged that United's refusal to allow petitioner to serve as a second officer after petitioner turned 60 years old constituted unlawful age discrimination. Plaintiff's complaint also alleged, as a second cause of action, that United's action was a willful violation of the ADEA. *Downey I, supra* at 154.

Petitioner and United ultimately resolved this lawsuit in a settlement agreement entered into by the respective parties. Pursuant to the relevant provisions of this agreement, United paid to petitioner $120,000 in consideration of

---

[2] In *United States v. Burke,* 504 U.S. ___, ___, 112 S. Ct. 1867, 1870-1871 (1992), the Supreme Court indicated that damages for a civil wrong are received on account of either a tort claim or a breach of contract claim, citing Keeton et al., Prosser and Keeton on the Law of Torts 2 (1984) ("A 'tort' has been defined broadly as a 'civil wrong, *other than breach of contract,* for which the court will provide a remedy in the form of an action for damages.'" (Emphasis added.)).

[3] The term "cause of action" means "The fact or facts which give a person a right to judicial redress or relief against another. The legal effect of an occurrence in terms of redress to a party to the occurrence. A situation or state of facts which entitle party to sustain action and give him right to seek a judicial remedy in his behalf. * * * Matter for which action may be maintained." Black's Law Dictionary 221 (6th ed. 1990).

petitioner's release of all claims arising out of his employment relationship with United, whether or not asserted in the ADEA. *Id.* at 155. The settlement agreement explicitly allocated $60,000 of this payment to nonliquidated damages and $60,000 to liquidated damages. The settlement agreement explicitly provided that the nonliquidated damages would be subject to all tax withholdings and tax deductions as required by law. *Id.* at 155. Thus, it is clear that the settlement agreement allocated the settlement proceeds between two separate components, one of which constituted backpay, and that this was the intent of the parties.

A claim of willful discrimination under the ADEA, such as the one made by petitioner, contains elements of both contract and tort. *Rogers v. Exxon Research & Eng. Co.,* 550 F.2d 834, 838-842 (3d Cir. 1977); *Rickel v. Commissioner, supra* at 520-521. Thus, in order to determine the taxability of petitioner's recovery under the ADEA, we must bifurcate the settlement proceeds into the part attributable to the contract claim and the part attributable to the tort claim. To the extent that the bifurcated part falls on the tort side of the line, the amount is excludable from gross income under section 104(a)(2). To the extent that the bifurcated part falls on the contract side of the line, the amount is includable in gross income under section 61(a).

A suit that requests damages for backpay, and that arises out of the breach of an employment agreement, is a contract action. *Rogers v. Exxon Research & Eng. Co., supra* at 838; see also *United States v. Burke,* 504 U.S. at ___, 112 S. Ct. at 1878 (Souter, J. concurring in the judgment) (the awarding of backpay is "quintessentially a contractual measure of damages"). In this regard, ADEA's ban on age discrimination, like title VII's ban on sex discrimination, is easily seen as a contractual provision implied in every contract as a matter of law. See, e.g., *United States v. Burke,* 504 U.S. at ___, 112 S. Ct. at 1878 (Souter, J. concurring in the judgment). The primary goal in making compensatory damages available in an ADEA action is to restore age discrimination victims to the economic state they would have been in but for the intervening unlawful discriminatory conduct of their employer. *Kossman v. Calumet County,* 800 F.2d 697, 703 (7th Cir. 1986); *Rodriguez v. Taylor,* 569 F.2d 1231, 1238 (3d Cir. 1977). In other words, the compensatory damages under the

ADEA allow victims of age discrimination to enjoy the benefit of the bargain they were expecting to receive when they entered into the employment contract with their respective employers. The fact that the right to recover the backpay arises from a statute, such as the ADEA, instead of common law, does not change the essential nature of the case. *Rogers v. Exxon Research & Eng. Co., supra* at 838.

Accordingly, any amount that petitioner received for nonliquidated damages falls on the contract side of the line, and, to that extent, the recovery is not excludable from gross income under section 104(a)(2). Cf. Rev. Rul. 72-341, 1972-2 C.B. 32 (payments from employer to employee in settlement of title VII action are includable in the employee's gross income because the payments would have been received as taxable wages but for the discrimination); see also *United States v. Burke,* 504 U.S. at ___, 112 S. Ct. at 1874 n.13 (Rev. Rul. 72-341, 1972-2 C.B. 32, cited with approval). It is undisputed that, but for the discrimination, an amount awarded as backpay would be taxable upon receipt. Sec. 61(a)(1). The awarding of liquidated damages, on the other hand, is a recovery for a tort or tortlike injury. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125 (1985) (liquidated damages awarded under the ADEA are punitive in nature). As such, any amount that petitioner received for liquidated damages falls on the tort side of the line, and, to that extent, the recovery is excludable from gross income under section 104(a)(2).

It appears that the majority is troubled by the thought of bifurcating a recovery between its tort and contract components. To the majority, it appears, a recovery must be all contract or all tort. To support this proposition, the majority cites and relies on our recent decision in *Horton v. Commissioner,* 100 T.C. 93 (1993).

In *Horton,* the defendant paid the plaintiffs/taxpayers both compensatory and punitive damages in connection with a personal injury that the taxpayers sustained when their home was destroyed by a gas explosion and fire caused by the defendant. With respect to the punitive damages, we held that those damages were excludable from the taxpayers' gross income under section 104(a)(2). In so doing, we stated that "Once the nature of the underlying claim is established as one for personal injury, any damages received on account

of that claim, including punitive damages, are excludable."
*Id.* at 96.

With regard to *Horton,* it is important to note that we explicitly stated that respondent did not argue that part of the punitive damages were allocated to something other than personal injury (e.g., property damage). *Id.* at 95 n.3. As Judge Beghe noted in his concurrence, the result might well have been different, in part, if respondent had made such an argument. *Id.* at 101. More specifically, to the extent that the punitive damages in *Horton* were attributable to property damage, a strong argument could have been made that those punitive damages were taxable because they were not received "on account of personal injuries."

This bifurcation approach is supported by many of our decisions prior to Downey I. These prior cases were thoroughly discussed in Judge Cohen's opinion in Downey I, see *Downey v. Commissioner,* 97 T.C. 150, 175-180 (1991) (Cohen, J., concurring in part and dissenting in part), and need not be discussed here. By this reference, however, Judge Cohen's discussion of these cases is incorporated herein. See also *Stocks v. Commissioner,* 98 T.C. 1, 17 (1992) (the Court also applied this bifurcation approach to the facts of a case decided after Downey I).

The majority herein fails to discuss the taxability of proceeds received in connection with a nonwillful violation under the ADEA, understandably so seeing that this case involves a willful violation. Notwithstanding that a nonwillful violation is not at issue here, I believe that a resolution of this case requires a brief discussion of the taxability of proceeds received in connection with a nonwillful violation. In the case of a nonwillful violation, it appears that a plaintiff's recovery, which is limited solely to backpay, see 29 U.S.C. sec. 626(b) (prevailing plaintiff entitled to additional equal amount only in cases of willful violations); *Hazen Paper Co. v. Biggins,* 507 U.S. ____, ____, 113 S. Ct. 1701, 1708-1709 (1993) (same), is not excludable under section 104(a)(2) because the recovery flows from a breach of contract. See, e.g., *United States v. Burke,* 504 U.S. at ____, 112 S. Ct. at 1874 ("we cannot say that a statute such as title VII, *whose sole remedial focus is the award of backwages,* redresses a tortlike personal injury within the meaning of section 104(a)(2) and the applicable regulations." (Emphasis added; fn. ref. omit-

ted.)). If this is the case, as it appears, it seems illogical that a taxable recovery becomes nontaxable merely because the taxpayer/plaintiff establishes that the employer's violation is willful, and is awarded an additional equal amount on account of such a violation.

In conclusion, the majority in Downey I stated that "we no longer can distinguish age discrimination from sex discrimination". Downey I, *supra* at 168. If this is so, we should reverse our decision in Downey I because we have recently learned that an amount received on account of sex discrimination under title VII is not excludable from income under section 104(a)(2). *United States v. Burke,* 504 U.S. at ___, 112 S. Ct. at 1874. Because I believe that the taxability of backpay recovered under title VII is commensurate with the taxability of backpay recovered under the ADEA,[4] I respectfully dissent.

JACOBS, *J.,* agrees with this concurring in part and dissenting in part opinion.

---

[4] See, e.g., *Hodgson v. First Fed. Sav. & Loan Association,* 455 F.2d 818, 820 (5th Cir. 1972) (substantive provisions of the ADEA generally are, in terms, identical to those of title VII except that "age" has been substituted for "race, color, religion, sex, or national origin"); *Rickel v. Commissioner,* 92 T.C. 510, 517 (1989), affd. in part and revd. in part 900 F.2d 655 (3d Cir. 1990), overruled by *Downey v. Commissioner,* 97 T.C. 150, 168-169 (1991).