PAUL B. OSBORNE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Osborne v. Commissioner
Docket No. 12054-93
United States Tax Court
T.C. Memo 1995-354; 1995 Tax Ct. Memo LEXIS 354; 70 T.C.M. (CCH) 247; August 1, 1995, Filed *354 An appropriate order will be issued and decicion will be entered under Rule 155. Paul B. Osborne, pro se. For respondent: Jillena A. Warner and Paul J. Krazeise, Jr.
GOLDBERG
GOLDBERG
MEMORANDUM FINDINGS OF FACT AND OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182. [1] Respondent determined a deficiency in petitioner's Federal income tax for taxable year 1989 in the amount of $ 7,802. The issues for decision are: (1) Whether petitioner's right of due process was violated by respondent during the examination of petitioner's 1989 Federal income tax return, and, if so, whether this violation invalidates the notice of deficiency; (2) whether a payment of $ 68,000 received by petitioner from John Hancock HealthPlans, Inc. (JHHI), pursuant to a settlement of litigation between the parties, is excludable from income under section 104(a)(2); and (3) whether petitioner underreported interest income received from Citizens Fidelity Bank and Trust Company (Citizens Fidelity Bank) during 1989. The remaining adjustments in the notice of deficiency regarding miscellaneous deductions for legal fees and out-of-pocket expenses *355 are not in dispute and will be reflected in our decision in this case. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition was filed in this case, petitioner resided in Jamestown, Kentucky. FINDINGS OF FACT In 1984, petitioner, in conjunction with a group of local physicians, formed MediPlan, Inc. (MediPlan) for the purpose of developing a health maintenance organization (HMO) in Kentucky. In early 1986, MediPlan began discussions with JHHI, a subsidiary of John Hancock Mutual Life Insurance Corporation, regarding JHHI's acquisition of MediPlan. In a letter to petitioner dated August 6, 1986, JHHI wrote: This letter confirms our intent to extend to you an offer of employment with John Hancock Healthplans, *356 contingent upon completion of the proposed transactions between JHHI and MediPlan. As we discussed last week, you would serve as Executive Director of John Hancock HealthPlan's Kentucky HMO during the pre-operational and early operational period. By February 1, 1987 your role would be re-evaluated. If a new Executive Director is hired at that time, you would continue to work in a consultative role for a six month period. During the pre-operational period, you would report to the Director of Development. As Executive Director of the operational HMO, you would report to the Regional Vice President and would be responsible for overall Plan management. This position will be effective on or about October 1, 1986 dependent upon successful completion of our agreements. Annual salary is $ 77,000. You would also be eligible for an annual bonus of up to 25% of base salary. * * * Petitioner responded with a letter dated September 11, 1986, stating "this is to acknowledge and accept the JHHI offer of employment date [sic] August 6, 1986 * * *". [2]
*357 In November 1986, petitioner agreed to assist JHHI with physician recruitment for the proposed HMO. A Consultant Agreement, with an effective date of November 16, 1986, was signed by petitioner and JHHI on February 1, 1987. The Consultant Agreement provides in relevant part: 1. The Consultant shall perform work on such matters as the Corporation [JHHI] shall from time to time request and for such periods as shall be mutually agreeable. This agreement is made with the Consultant as an independent contractor and not as an employee of the Corporation. * * * 3. This agreement may be terminated at any time by either party by giving written notice to the other.
On December 24, 1986, JHHI and the shareholders of MediPlan executed a stock purchase agreement, which outlined the terms and conditions of the acquisition. On or about April 15, 1987, JHHI completed the acquisition of MediPlan, thereby creating the new corporation of John Hancock HealthPlans of Kentucky, Inc. (JHKY). At such time, petitioner resigned as chief executive officer of MediPlan and executed a non-competition agreement with JHHI, which prohibited petitioner, inter alia, from working for, owning, managing, *358 or participating in "any business enterprise * * * which designs, develops and/or operates a health maintenance organization, preferred provider organization or similar alternative delivery system within the Commonwealth of Kentucky or any contiguous state" for 5 years, unless certain specific conditions were satisfied. On or about May 5, 1987, petitioner was advised that his consulting services would no longer be needed. JHHI offered to retain petitioner as a consultant for an additional 3-month period, but petitioner refused. Thereafter, JHHI sent petitioner a letter terminating his services. On July 20, 1987, petitioner filed a complaint against JHHI and JHKY alleging wrongful dismissal and fraudulent misuse of petitioner's rights and interest in MediPlan, due to JHHI's intent to sell JHKY immediately after its acquisition. Petitioner requested that the court award him "lost income, past and future, in an amount to be shown by the proof." On May 9, 1988, petitioner filed an amended complaint in his case against JHHI. The amended complaint alleges: 2. That on September 11 [1986], the plaintiff accepted the binding agreement after a meeting of minds and the contractual intent *359 was clear that Paul Osborne would serve as Executive Director of John Hancock Health Plans of Ky, Inc. HMO during the pre operational [sic] period. * * * 5. That the plaintiff has made no waiver of the terms of the contract but the defendants have breached the contract May in [sic] 1987. 6. The plaintiff never ratified the breach by defendant and there has been no statutory grounds or public policy reasons that the contract should not be enforciable [sic]. 7. Therefore, the defendants have breached their contact [sic] by terminating Paul Osborne's employment and have breached their covenant of good faith with the plaintiff while the plaintiff detrimentally relied on the good faith of the defendants. 8. That the defendants on the basis of promissory estoppel should be precluded from breaching the contract and violation of their duty of good faith and fair dealings on the contract which was supported by good consideration that the plaintiff provided in addition to his services of time [sic]. 9. That without good cause the defendants breached the contract providing his employment. Wherefore, the plaintiff prays for relief from the defendants as follows: (1) For *360 the plaintiffs [sic] lost income that he would have on the contract both past and future in an amount to be shown by the proof and for an amount of income he would have obtained had the contract not been breached.
* * * Shortly before the scheduled trial date of December 13, 1988, JHHI and petitioner agreed to settle the case for $ 68,000. However, a dispute arose as to whether JHHI should withhold taxes from the settlement payment. Petitioner argued that the payment represented damages, not wages, and refused to sign a settlement agreement if taxes were withheld. The parties eventually reached an agreement on January 6, 1989, with the execution of a document styled "Receipt, Release and Indemnity Agreement" (the Release). The Release provided that petitioner be paid $ 22,667 for attorney's fees, $ 6,000 for out-of-pocket expenses, and $ 39,333 claimed to be due by petitioner as liquidated damages in his capacity as independent contractor or consultant. JHHI then issued a check made payable to petitioner and his attorney in the amount of $ 68,000. In February 1989, JHHI issued to petitioner a Form 1099 reporting that he received $ 118,850 during 1988, including $ 50,850 from *361 the sale of his MediPlan stock, pursuant to the Stock Purchase Agreement, and $ 68,000 from the settlement of his suit against JHHI. Petitioner informed JHHI, as well as the Internal Revenue Service, that the information on the Form 1099 was erroneous because he did not receive the settlement until 1989. JHHI issued a second Form 1099 to petitioner in February 1990, reporting that petitioner received $ 68,000 in 1989. Petitioner did not report any portion of the settlement payment on his 1989 Federal income tax return. On or about January 21, 1993, respondent sent petitioner a Letter 950, including a report proposing adjustments to his tax liability for 1989, and requested that petitioner sign a Form 872 consent extending the assessment statute with respect to said taxable year. Petitioner signed a Form 872-A, Special Consent to Extend the Time to Assess Tax, on January 27, 1993. Immediately thereafter, however, petitioner executed a Form 872-T, effectively terminating his consent to extend the time to assess tax for the 1989 taxable year. As a result, on or about February 2, 1993, respondent notified petitioner of her intent to issue a notice of deficiency with respect to petitioner's *362 1989 Federal income tax return, inasmuch as the statute of limitations for assessment on this taxable year would expire on April 15, 1993. On February 15, 1993, petitioner requested an administrative appeals hearing regarding respondent's proposed adjustments. On March 12, 1993, respondent issued a notice of deficiency to petitioner for the taxable year 1989. Petitioner filed his petition on June 14, 1993. On or about February 24, 1994, petitioner was informed that respondent's Appeals Office was available for a conference regarding his case. No such conference was held, and, on May 9, 1994, petitioner's case was tried before this Court. In her notice of deficiency, respondent determined that the payment in the amount of $ 68,000 received by petitioner from JHHI was taxable. In addition, respondent determined that the portion of the settlement representing attorneys' fees and out-of-pocket expenses was deductible as a miscellaneous expense. As a result, respondent further determined that petitioner was entitled to claim itemized deductions instead of the lesser standard deduction. Respondent also determined that petitioner failed to report interest of $ 1,900 received from Citizens *363 Fidelity Bank. Petitioner contends that the settlement payment is exempt from taxation under section 104(a)(2), and that he did not receive interest income in excess of the amount he reported on his return. At trial, petitioner orally moved to invalidate the notice of deficiency based on respondent's violation of his right to due process in the course of examining petitioner's 1989 return. OPINION I. Due Process
Petitioner argues that the notice of deficiency should be invalidated because of alleged violations of his constitutional right of due process. He contends that respondent conducted two separate examinations of his 1989 taxable year, and that deliberately misleading information regarding the administrative appeal process appears in Internal Revenue Service publications. Respondent contends that neither the alleged double examinations, nor the allegedly misleading language of the publications rises to the level of a violation of petitioner's right of due process, and that there exists no grounds upon which to invalidate the notice of deficiency. In Riland v. Commissioner, 79 T.C. 185, 201 (1982), we observed that the Tax Court provides *364 a de novo proceeding and "absent substantial evidence of unconstitutional conduct on respondent's part which would impugn the integrity of this Court * * * we generally will not * * * examine respondent's motives or procedure leading to * * * [her] determination." Based on the record in this case, we find that petitioner has not proven that respondent conducted two distinct examinations of his 1989 taxable year. See, e.g., Collins v. Commissioner, 61 T.C. 693 (1974). Petitioner further contends that the wording of Internal Revenue Service publications regarding appeals and administrative hearings is deliberately misleading, and that respondent used the promise of an appeal to elicit information from petitioner, and intended to exploit that information to respondent's advantage. We find petitioner's argument to be without merit. Petitioner does not reveal what information was elicited by respondent, nor does he explain how such information was wrongly used by respondent. Under Branerton Corp. v. Commissioner, 61 T.C. 691 (1974), parties are directed to participate in informal discovery between themselves before attempting *365 to invoke formal discovery procedures. As such, an informal request by respondent for information from petitioner is hardly improper. With regard to allegedly misleading statements made in Internal Revenue Service publications, informal publications are not authoritative sources of Federal tax law, and, therefore, do not control the outcome of the issues in this case. Zimmerman v. Commissioner, 71 T.C. 367, 371 (1978), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979). Even if the publications at issue led petitioner to believe he was entitled to an appeal, absent unusual circumstances not present in this case, the failure by respondent to follow her own administrative procedures does not rise to the level of a violation of the Fifth Amendment Due Process Clause of the Constitution. Riland v. Commissioner, 79 T.C. 185, 200-202 (1982), and cases cited therein. Further, the providing of an appeal is not essential to the validity of a notice of deficiency. Cataldo v. Commissioner, 60 T.C. 522 (1973), affd. per curiam 499 F.2d 550 (2d Cir. 1974); *366 Griffith v. Commissioner, T.C. Memo. 1989-70. Based on the foregoing, we conclude that petitioner's constitutional right of due process has not been violated and the notice of deficiency is valid. Therefore, petitioner's oral motion to invalidate the notice of deficiency for lack of due process is denied. II. Settlement Payment
The second issue for decision is whether the settlement payment of $ 68,000 received by petitioner from JHHI is includable in petitioner's gross income. Section 61(a) defines gross income as "all income from whatever source derived". An exception to this broad definition is found under section 104(a)(2) which provides that gross income does not include damages received if (1) the underlying cause of action giving rise to the recovery is based upon tort or tort-type rights, and (2) the payment is received "on account of personal injuries or sickness". Sec. 104(a)(2); Commissioner v. Schleier, 515 U.S.     (June 14, 1995); sec. 1.104-1(c), Income Tax Regs. In the context of a settlement agreement, the nature of the claim underlying the taxpayer's damage award determines whether damages are so received. United States v. Burke, 504 U.S. 229, 235 (1992); *367 Garrett v. Commissioner, T.C. Memo. 1994-70. Factors relevant to this determination include: (1) The allegations made in the complaint and the language of the pleadings; (2) the evidence presented and the arguments made at trial; and (3) the intent of the payor in making the payment. Threlkeld v. Commissioner, 87 T.C. 1294, 1300 (1986), affd. 848 F.2d F.2d 81 (6th Cir. 1988); Bent v. Commissioner, 87 T.C. 236 (1986), affd. 835 F.2d 67 (3d Cir. 1987); Britell v. Commissioner, T.C. Memo. 1995-264. Where a case is settled prior to trial, we must evaluate the facts and circumstances surrounding the settlement. Petitioner argues that the underlying cause of his action against JHHI was tortlike personal injury in the nature of damage to his personal health and reputation, mental distress, fraud, and misrepresentation. Petitioner claims, therefore, that the payment received from JHHI falls neatly within the confines of section 104(a)(2). Respondent argues that the underlying cause of petitioner's action against JHHI was breach of contract *368 and fails to satisfy the requirements of section 104. We agree with respondent. At trial, petitioner presented myriad documents related to his suit against JHHI, including the pleadings, transcripts of seven depositions in their entirety, affidavits of third parties, and assorted correspondence between the parties. A review of these documents clearly indicates that the underlying cause of action giving rise to petitioner's recovery was breach of contract. First, in letters written to JHHI prior to filing his complaint, petitioner repeatedly references JHHI's offer of employment, his acceptance and later termination, and his rights under the contract. In his complaint, petitioner asks the Court to award him "lost income, past and future". In his amended complaint, petitioner repeatedly refers to JHHI's breach of contract and requests relief in the form of "lost income that he would have on the contract both past and future" and "for an amount of income he would have obtained had the contract not been breached". At no point in his pleadings did petitioner allege injury to his mental or physical health, dignity, or reputation. Petitioner's single allegation of JHHI's fraudulent misuse *369 of his rights and interest in MediPlan does not overcome the dominant nature of his cause of action -- breach of contract. In support of his claim of tortlike injury, petitioner cites the following language of the Release: In consideration of the payment by Defendants to Osborne and Beliles [petitioner's attorney], Osborne and Beliles hereby irrevocably and unconditionally release, acquit and discharge Defendants from any and all actions, causes of actions, suits, debts, charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages and expenses (including attorneys' fees and costs actually incurred) of any nature whatsoever, in law or equity, or otherwise (including without limitation promissory estoppel or alleged fraud), which Osborne or Beliles ever had, now have, or which Osborne or Beliles hereafter may have particularly, against Defendants, including, but not limited to, any claims against Defendants arising from or related to Osborne's performance or completion of work or services for Defendants (regardless of the capacity in which Osborne performed or completed said work or services), the Lawsuit, the events or circumstances *370 on which the Lawsuit is based, and any and all claims arising out of any alleged violation by Defendants of any agreement, contract, covenant or promise previously entered into between Osborne and Defendants, from the beginning of time to the date of this Release including but not limited to any and all claims at issue in the Lawsuit and any claims which might or could have been placed at issue in the Lawsuit; [Emphasis added.]
Petitioner singles out the phrase "alleged fraud", and thereupon rests his argument that his claims against JHHI included tortlike injuries. However, the term "alleged fraud" as used in the Release does not establish that any portion of the settlement payment was received by petitioner on account of personal injury. See Commissioner v. Schleier,supra.
Petitioner further contends that the use of the term "liquidated damages" in the Release indicates that the recovery received was on account of personal injury. In support of his position, petitioner cites Downey v. Commissioner, 100 T.C. 634 (1993), in which this Court held that both "nonliquidated" and liquidated damages received pursuant to the Age Discrimination *371 in Employment Act of 1967 (ADEA), Pub. L. 90-202, 81 Stat. 602, were excludable from gross income under section 104(a)(2). However, the recent Supreme Court opinion in Commissioner v. Schleier, 515 U.S.     (June 14, 1995), rejects this holding. The Supreme Court stated that "Our holding in Thurston disposes of respondent's argument and requires the conclusion that liquidated damages under the ADEA, like back wages under the ADEA, are not received 'on account of personal injury or sickness'." Id.
Citing Bent v. Commissioner, supra, petitioner argues in the alternative that damages received as the result of a breach of contract action may be excludable from gross income under section 104. We have examined our opinion in Bent and are unable to find language supporting petitioner's argument. In Bent, a teacher sued the school board, alleging contract violations and numerous violations of the teacher's civil rights under 42 U.S.C. sec. 1983 (1988). The State court concluded that the teacher's freedom of speech had been abridged and rejected the contract claim and all other 42 U.S.C. sec. 1983 *372 claims. The case was then settled on basis of the State court's decision. This Court found that the settlement received was on account of personal injuries and excludable from income under section 104(a)(2). Therefore, petitioner's argument that Bent stands for the proposition that breach of contract damages are excludable from income is without merit. Moreover, petitioner's argument ignores the Supreme Court's decisions in Burke and Schleier. Based on the foregoing, we find that the cause of action which gave rise to petitioner's settlement payment was breach of contract. The full amount received is includable in petitioner's gross income. Petitioner is allowed (in lieu of the standard deduction claimed on his return) miscellaneous deductions under section 212 for out-of-pocket expenses and attorneys' fees in the aggregate amount of $ 28,667, subject to the limitations of section 67. III. Unreported Interest Income
The third issue for decision is whether petitioner failed to report interest income received from Citizens Fidelity Bank in the amount of $ 1,900. On his 1989 Federal income tax return, petitioner reported interest income from Citizens Fidelity Bank *373 in the amount of $ 572.19, and attached a corresponding statement from Citizens Fidelity Bank which reported the payment of interest to him in that amount and stated: "This form is a composite substitute for Form 1099-INT and Form 1099-OID". Petitioner also reported interest income from the Bank of Jamestown ($ 140.48) and Liberty National Bank ($ 76.72). Respondent determined in her notice of deficiency that petitioner failed to report an additional $ 1,900 in interest income received from Citizens Fidelity Bank. In support of this determination, respondent simply made reference to information received from Citizens Fidelity Bank. At trial, petitioner testified under oath that he reported the correct amount of interest received from Citizens Fidelity Bank, and respondent was unable to provide supporting documents for this additional interest. While this Court was assured that Citizens Fidelity Bank would provide this information to respondent, none has been forthcoming. Determinations by respondent are presumed correct, and a taxpayer bears the burden of proving otherwise by a preponderance of the evidence. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). *374 However, where a taxpayer offers "competent and relevant credible evidence" that a determined deficiency is incorrect, then the statutory presumption of correctness may be overcome so that the procedural burden of going forward with the evidence is shifted to respondent. Sullivan v. United States, 618 F.2d 1001, 1008 (3d Cir. 1980). In the instant case, petitioner attached a statement from Citizens Fidelity Bank to his return, and included the interest income reported thereon in his gross income. Respondent has been unable to produce the Form 1099 allegedly sent to respondent by Citizen Fidelity reporting the additional interest income, despite having had more than enough time to provide us with the documentation. Respondent relied solely on a presumption of correctness. Based on the record in this case, we find for petitioner on this issue. To reflect the foregoing, An appropriate order will be issued, and a decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. John Hancock contends that petitioner's letter was not received until Aug. 13, 1987.↩