SYLVIA L. BECKEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Beckey v. Commissioner
Docket No. 23249-92
United States Tax Court
T.C. Memo 1994-514; 1994 Tax Ct. Memo LEXIS 522; 68 T.C.M. (CCH) 945; October 17, 1994, Filed *522 Decision will be entered under Rule 155. Sylvia L. Beckey, pro se. For Respondent: Gerald L. Brantley COUVILLION
COUVILLION
MEMORANDUM OPINION COUVILLION, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) [1] and Rules 180, 181, and 182. Respondent determined a deficiency of $ 6,305 in petitioner's Federal income tax for 1989. The issues for decision are: (1) Whether certain payments received by petitioner are excludable from income under section 104(a)(2) as damages received on account of personal injuries, and (2) whether petitioner is entitled to deductions under section 162(a) for unreimbursed employee business expenses. Some of the facts were stipulated and are found accordingly. The stipulation and attached exhibits are incorporated herein by reference. Petitioner resided at Austin, Texas, *523 at the time her petition was filed. Petitioner has a juris doctor degree in law, a master's degree in law, and a master's degree from Johns Hopkins School of Advanced International Studies. In November 1986, petitioner was employed as a trial attorney by an agency (the agency) of the United States at New York, New York. Sometime in 1987, petitioner became embroiled in a dispute with her employer. Petitioner filed a labor grievance and reserved her rights for a claim with the agency's Equal Employment Opportunity (EEO) office. Although petitioner never commenced an EEO claim, she did pursue her labor grievance with her employer to protect her job. In late July 1989, petitioner attempted to file a Jane Doe [2] tort suit with the New York Supreme Court against her employer. The Supreme Court, however, would not accept that type of suit, without the proper names of the parties. Petitioner never filed an amended complaint. *524 At some point, petitioner hired a Washington, D.C., attorney to represent her against her employer. With the assistance of her attorney, Ms. Lyons, and an attorney associated with Ms. Lyons, petitioner negotiated a settlement agreement [3] with her employer, which was signed by petitioner on August 21, 1989. During the negotiations, neither petitioner nor her attorney considered or discussed the tax consequences of the agreement. Moreover, the tax consequences of the agreement are not addressed in the document. Petitioner and the agency agreed that petitioner resigned her position with the agency effective Friday, August 18, 1989, in consideration of the conditions provided in the agreement. In accordance with the agreement, petitioner was reemployed by the agency for a period not to exceed 6 months, effective *525 August 21, 1989, and ending February 21, 1990. Petitioner was reemployed as a temporary employee without loss of salary, health insurance, or pension benefits and had the same obligations imposed on her as an agency employee. Petitioner agreed that, during the period of temporary employment, she would prepare a written report to the agency's general counsel concerning the treatment of foreign judgments by United States courts. In preparing the report, petitioner was to use only library resources and only those located outside the agency offices. If petitioner needed office supplies in connection with her research, the agency would reimburse her for such costs, up to $ 100. Petitioner agreed that the report, "like the research papers that any other employee" prepared, was the sole property of the agency and could not be published or submitted for publication by petitioner. The agency agreed that, during petitioner's period of temporary employment, petitioner could seek outside employment, but could do so only if she obtained the approval of the director of personnel of the agency. Also, any outside employment could not interfere with petitioner's obligation to prepare the *526 report for the agency general counsel. [4]
The agency further agreed to expunge from petitioner's personnel file her 1987-1988 performance appraisal rating and replace it with a "presumed fully successful" rating; that petitioner would be given the same "presumed fully successful" rating on her 1988-1989 performance appraisal; that the agency would refrain from including in petitioner's personnel file a narrative description of her performance for the years in question; and that the agency would refer all questions concerning her work to the director of personnel. Additionally, the agency agreed that petitioner would receive, like other departing agency employees, a certificate recognizing the time she spent with the agency. Such a certificate was presented to petitioner, and it bears the date of August 18, 1989. Petitioner and the agency agreed that the existence or terms of *527 the agreement were confidential. If petitioner violated the nondisclosure provisions, the agency could terminate her temporary employment and the payment of salary or benefits. Petitioner and the agency agreed that the actions being taken pursuant to the agreement were for the purpose of settlement, and that no action agreed to in the agreement constituted a finding, implication, or admission of wrongdoing, tort, or discrimination, or violation of any rule, regulation, law, or executive order, on the part of the agency, any official, employee, or former employee of the agency, or by petitioner. Petitioner and the agency agreed that, if any provision of the agreement was found to be invalid by a court of competent jurisdiction, the agency was not bound to continue petitioner's temporary employment and the payment of salary or benefits. Petitioner and the agency agreed that the terms of the agreement constituted a complete and final resolution of any and all pending differences, disputes, or grievances relating to or arising out of her employment, separation from, and period of temporary employment with, the agency. Petitioner and the agency further agreed that, if petitioner attempted *528 to file any claim against the agency, the agency could terminate petitioner's temporary employment and the payment of salary or other benefits. During the 6-month period of petitioner's temporary employment, she completed the research project according to the terms of the agreement. The research project included 100 pages of discussion and an appendix with a 50-page, 50-State study with charts. During the 6-month period, petitioner was paid her salary at the end of each pay period. For the period from August 21, 1989, to December 31, 1989, petitioner received $ 22,224. With each payment, petitioner received a pay stub listing the income as "taxable earnings". The agency withheld amounts for FICA, retirement, and health and life insurance. Additionally, during this period, petitioner earned annual and sick leave. Finally, the agency set aside retirement benefits for petitioner. For petitioner's 1989 taxable year, the year at issue, the agency issued an Internal Revenue Service (IRS) Form W-2, Wage and Tax Statement, reflecting "Wages, tips, other compensation" of $ 57,083.20, "Federal income tax withheld" of $ 4,055.90, "Social security tax withheld" of $ 3,604.81, and "Social *529 security wages" of $ 48,000. On her 1989 Federal income tax return, petitioner deducted $ 22,224 from her gross income, claiming the amount received pursuant to the agreement was nontaxable under section 104(a)(2). Petitioner also deducted $ 34,688.13 as Schedule A itemized deductions for unreimbursed employee expenses. In the notice of deficiency, respondent determined that the $ 22,224 was not excludable from gross income and also disallowed portions of the Schedule A itemized deductions claimed by petitioner. The determinations by respondent in a notice of deficiency are presumed correct, and the burden is on the taxpayer to prove that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Regarding the first issue, whether the $ 22,224 is includable in gross income, section 61 provides that gross income includes "all income from whatever source derived". Section 104(a)(2), however, provides that gross income does not include the "amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness". The term "damages received" *530 on account of personal injuries or sickness means an amount received through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of prosecution. United States v. Burke, 504 U.S.    , 112 S.Ct. 1867, 1870 (1992); Horton v. Commissioner, 100 T.C. 93, 97 (1993), affd.    F.3d     (6th Cir. 1994); sec. 1.104-1(c), Income Tax Regs. Section 104(a)(2), however, does not exclude damages received on account of the prosecution or settlement of economic rights arising out of a contract. Metzger v. Commissioner, 88 T.C. 834, 848-850, 858 (1987), affd. without opinion 845 F.2d 1013 (3d Cir. 1988). Where there is a settlement agreement, the Court looks to the nature of the claim underlying the payment to the taxpayer, rather than the validity of the claim, to determine whether payments are on account of a tortlike personal injury. United States v. Burke, 504 U.S. at    , 112 S. Ct. at 1872. Such a determination is factual and is generally made by reference to the settlement *531 agreement. Stocks v. Commissioner, 98 T.C. 1, 10-11 (1992). If the settlement agreement lacks express language stating that the payment is made on account of personal injuries, then the most important factor in determining an exclusion under section 104(a)(2) is the "intent of the payor" in making the settlement. Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo 1964-33; Stocks v. Commissioner, supra at 10. The settlement agreement between petitioner and the agency contains no express language that the payment in question was or was not made on account of a personal injury. However, the language in the agreement clearly indicates the agreement was one in contract, obligating the agency to temporarily employ petitioner, and that the agency intended the agreement to be such. The agreement gives every indication that the parties were creating or, more specifically, continuing an employer-employee relationship. The agency's intent that the payments were compensation for temporary employment and not for personal injuries is evidenced *532 by the fact that the agency agreed to pay petitioner under the same terms as when she was permanently employed with the agency. The agency also continued petitioner's health insurance and continued to contribute to petitioner's retirement and pension benefits. The agency further issued pay stubs that specifically stated the amounts were "taxable earnings" and withheld FICA taxes from the amounts paid. Additionally, the agency issued an IRS Form W-2, Wage and Tax Statement, to petitioner. Several of the promises made by the agency, and for which petitioner bargained, were related to assurances by the agency that the agency would not impair petitioner's ability to effectively secure future employment. In particular, the agency agreed to expunge from petitioner's personnel file her 1987-1988 performance appraisal rating and replace it with a "presumed fully successful rating", to give petitioner the same "presumed fully successful" rating on her 1988-1989 performance appraisal, to refrain from including in her personnel file a narrative description of her performance for the years in question, to refer all questions concerning her work to the director of personnel, and to give her *533 a certificate of recognition. These promises were not intended to compensate petitioner for personal injuries, but instead to benefit petitioner's ability to successfully secure future employment. The agency's intent is further evidenced by the fact that the agency was entitled to all rights to the research paper that the petitioner was required to prepare, "like the research papers any other employee prepares" for the agency. (Emphasis added.) In the event of breach of the agreement by petitioner, the remedy available to the agency was the termination of petitioner's temporary employment and cessation of salary and benefits. Finally, if the agreement was declared invalid by a court of competent jurisdiction, the agency was not bound to continue petitioner's temporary employment. At trial, petitioner insisted that her status as an employee was essentially "fictitious", and that her obligation to prepare the research paper was "not a material element of the contract". Petitioner further asserted that the agreement was signed under "duress ", and that the agency was making "threats" of criminal prosecution. However, petitioner failed to present sufficient evidence to corroborate *534 these self-serving statements. Petitioner failed to subpoena or call as witnesses anyone who could have established her claim, such as her attorney, Ms. Lyons, or her attorney's assistant who helped negotiate the agreement. Petitioner introduced into evidence various receipts and notes from several doctors but failed to call any medical experts who could establish either physical or mental injury petitioner may have suffered as a result of her employment or from the negotiation of the settlement. In contrast to petitioner's testimony, the agreement, which petitioner signed, states that "no promise, threat, or offer of any kind, except as reflected in this document, has been extended by either party in order to obtain this agreement." (Emphasis added.) Petitioner also asserts that the fact that her certificate of recognition was dated August 18, 1989, indicates that the agency no longer considered her an employee after that date. The Court does not find this controlling. The agreement speaks for itself and is the best indicator of the agency's intent. Petitioner is an attorney, with two law degrees and a master's degree from Johns Hopkins School of Advanced International *535 Studies. She was assisted by other attorneys in the negotiation of the agreement. Petitioner should have realized that the agreement was one in contract, establishing an employment relationship, and was not for personal injuries. Indeed, petitioner and the agency agreed that no action agreed to in the agreement would "constitute a finding, implication, or admission of wrongdoing, tort". (Emphasis added.) Petitioner acknowledged that neither she nor her attorney considered or discussed the tax consequences of the agreement. Petitioner has not sustained her burden of proof on this issue. The payments to petitioner pursuant to the agreement are not excluded under section 104(a)(2) and, therefore, must be included in income. Respondent is sustained on this issue. With respect to the second issue, petitioner claimed on her 1989 income tax return, on Schedule A, Itemized Deductions, unreimbursed employee business expenses totaling $ 34,688.13. She attached to her return a schedule captioned "1989 Professional Related Expenses" itemizing these expenses. In the notice of deficiency, respondent disallowed some of the expenses claimed. Expenses incurred by an employee that are *536 not reimbursed by the employer are generally deductible under section 162(a), which allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.[5]Primuth v. Commissioner, 54 T.C. 374, 377 (1970). To qualify for the deduction, an expense must be both "ordinary" and "necessary" within the meaning of section 162(a). Deputy v. duPont, 308 U.S. 488, 495 (1940). Whether the amount disallowed by respondent constitutes an ordinary and necessary expense incurred in the taxpayer's trade or business as an employee is a question of fact to be determined from the evidence presented with the burden being on the taxpayer to overcome the presumed correctness of respondent's determination. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Allen v. Commissioner, T.C. Memo. 1988-166. *537 Of the $ 34,688.13 claimed by petitioner as unreimbursed employee business expenses, the following table shows those expenses which were claimed by petitioner on her return, the amounts which were allowed by respondent in the notice of deficiency, and the amounts which were disallowed: Item
Claimed on Allowed by
Amount
Return Respondent
Disallowed
Storage expenses
$ 2,069.16 $ 2,010.03
$ 59    Utilities & telephone
1,814.34
--   1,814
Postage & faxing cost
874.19
--   874
New office expenses
2,461.49
1,705.07
756
Interview/job search
3,502.92
--   3,503
Home office
1,866.00
--   1,866
Travel
3,266.73
--   3,267
Interest on loans
9,866.50
--   9,867
Insurance
251.00
251.00
-- Out of town expenses
2,230.00
2,230.00
-- Totals    $ 28,202.33 * $ 6,196.10 * $ 22,006
* The total for these two columns is $ 28,202.10. The
difference of $ .23 from the amount claimed on the return is
apparently accounted for by respondent's rounding off in the
amounts disallowed. The $ 22,006 disallowed is prior to
application of the 2 percent floor under sec. 67(a).
Deductions are a matter of legislative grace, and taxpayers are *538 required to, among other requisites, support their claims. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). A taxpayer is required to maintain records sufficient to establish the amount of his or her income and deductions. Sec. 6001. Under certain circumstances, where a taxpayer establishes entitlement to a deduction but does not establish the amount of the deduction, the Court is permitted to estimate the amount allowable. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). There must be sufficient evidence in the record to permit the Court to conclude that a deductible expense was incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). In estimating the amount allowable, the Court bears heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, supra at 544. With respect to the individual items at issue, respondent, on brief, conceded the $ 59 disallowed for storage expenses. Respondent disallowed the entire $ 1,814.34 claimed by petitioner for utilities *539 and telephone on the ground that a portion of the expenses had not been substantiated and the expenses, if incurred, were personal and, therefore, not deductible under section 262. The Court is satisfied from the record that petitioner incurred some telephone expenses that are allowable as an employee business expense and, pursuant to Cohan v. Commissioner, supra, concludes that petitioner is entitled to a deduction of $ 248 for telephone expenses. The disallowed utility expenses relate to the apartment where petitioner resided. Petitioner contends that the deductions should be allowed as deductible home office expenses. Respondent determined that petitioner was not entitled to a home office deduction, and, therefore, the utility expenses were disallowed. Regardless of whether petitioner was entitled to a home office deduction, which is discussed below, petitioner presented no evidence to substantiate her claimed utilities expenses. In sum, of the $ 1,814.34 claimed by petitioner for utilities and telephone, petitioner is entitled to a $ 248 deduction for telephone expenses. Petitioner claimed a deduction for postage and fax expenses of $ *540 874.19. Respondent disallowed the entire amount for lack of substantiation. At trial, petitioner introduced canceled checks and receipts stapled to an audit worksheet with the notation: "job hunting, labor grievances, related corresp. to DC and NY attorneys, and other professional related correspondence". Again, based on the record and Cohan v. Commissioner, supra, the Court is satisfied that petitioner is entitled to the full deduction claimed on her return for postage and fax expenses of $ 874.19. Petitioner claimed new office expenses of $ 2,461.49. Respondent allowed $ 1,705.07 of these expenses. Based on petitioner's testimony and evidence introduced at trial to substantiate an additional office expense of $ 756, respondent, on brief, conceded that adjustment. Petitioner claimed a deduction of $ 3,502.92 for interview and job search expenses. From petitioner's testimony and the evidence at trial, these expenses were incurred for clothing, dry cleaning, and fixing petitioner's hair. The expense of uniforms is deductible under section 162(a) if: (1) The uniforms are of a type specifically required as a condition of employment; (2) the *541 uniforms are not adaptable to general usage as ordinary clothing; and (3) the uniforms are not so worn. Yeomans v. Commissioner, 30 T.C. 757, 767-769 (1958). It is clear from petitioner's testimony that the clothing claimed as expenses was adaptable to general use. Therefore, her clothing expenses are not deductible. The remaining expenses for dry cleaning and fixing petitioner's hair constitute personal expenses and are not deductible under section 262. Respondent is sustained with respect to these expenses. Petitioner deducted $ 1,866 home office expenses, of which respondent disallowed the entire amount. Generally, section 280A provides that no deduction otherwise allowable shall be allowed with respect to the use of a dwelling unit that is used by the taxpayer during the taxable years as a residence. Section 280A(c), however, provides an exception if a residence is used for business under certain conditions. These conditions are: (1) The business use must be the exclusive use of the office and be on a regular basis. (2) The home office must be used: (A) as the principal place of business for any trade or business of the taxpayer; (B) *542 as a place of business used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business; or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business. (3) In the case of a taxpayer who is an employee, the use must be for the convenience of the employer. All three requirements must be met in order for a deduction to be allowable. Petitioner testified at trial that she used her living room as an office for preparing her tax return and her labor grievance and for her job search. These uses are not uses that come within the exception of section 280A(c). The Court sustains respondent on this item. Petitioner deducted travel expenses of $ 3,266.73, all of which was disallowed by respondent. The deduction for travel expenses away from home, including meals and lodging, under sec. 162(a)(2), is conditioned on such expenses being substantiated by "adequate records" or by sufficient evidence corroborating the claimed expenses pursuant to section 274(d). Sec. 1.274-5(a)(1), Income Tax Regs. To meet the adequate records requirements of section 274(d), *543 a taxpayer "shall maintain an account book, diary, statement of expense or similar record * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure". Section 1.274-5(c)(2)(i), Income Tax Regs. (Emphasis added.) The elements to be proven with respect to each traveling expense are the amount, time, place, and business purpose of the travel. Sec. 1.274-5(b)(2), Income Tax Regs. The substantiation requirements of section 274(d) are designed to encourage taxpayers to maintain records, together with documentary evidence substantiating each element of the expense sought to be deducted. Sec. 1.274-5(c)(1), Income Tax Regs.
Petitioner claimed travel expenses with respect to 13 business trips. However, at trial, petitioner testified that some of these trips involved nonbusiness purposes as visiting a cousin in France, going to a class reunion, and going to a funeral. Petitioner introduced into evidence audit worksheets with accompanying receipts with respect to several of these claimed expenses. The records are insufficient to satisfy the stringent substantiation requirements of section 274(d). In the case of travel *544 expenses, specifically including meals and lodging while away from home, as well as in the case of entertainment, section 274(d) overrides the so-called Cohan doctrine. Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Therefore, the Court is unable to use its discretion in allowing any of the travel expenses deducted by petitioner. Respondent is sustained with respect to the deductibility of petitioner's travel expenses. Finally, petitioner deducted interest of $ 9,866.50 as an unreimbursed employee business expense on Schedule A. Respondent determined that the interest was not deductible as an employee business expense but was instead personal interest. For 1989, personal interest is deductible only to the extent of 20 percent of the interest. Sec. 163(h). During the audit of petitioner's return, respondent determined that petitioner substantiated interest expenses of $ 11,492, which is more than the amount she claimed on Schedule A of her return but redetermined the interest *545 as personal interest. Applying the 20-percent limitation to this amount, respondent allowed petitioner a deduction for personal interest of $ 2,298.39. Petitioner did not present sufficient evidence at trial to overcome respondent's presumption of correctness. Respondent, therefore, is sustained on this issue. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner attempted to file suit with Jane Doe as the captioned plaintiff and herself as the attorney for plaintiff.↩
3. The settlement agreement was confidentially drafted and for purposes of settlement only. The Court record for this case has, therefore, been sealed in order to protect the privacy interests of both parties.↩
4. Petitioner did, in fact, secure employment with a New York law firm, commencing work on Aug. 21, 1989, the day the agreement was signed.↩
5. For tax years beginning on or after Jan. 1, 1987, as in this case, miscellaneous itemized deductions, including unreimbursed employee expenses, are deductible, under sec. 67(a), only to the extent that the aggregate miscellaneous itemized deductions exceed 2 percent of the taxpayer's adjusted gross income. Tax Reform Act of 1986, Pub.L. 99-514, 100 Stat. 2085.↩